MAURICE MEYER, JR., et al., Appellants, *v.* ALBERT M. WHISNANT, JR., Respondent, et al., Defendants.

Argued April 22, 1954; decided July 14, 1954.

*Simon Brett* for Maurice Meyer, Jr., appellant. I. The Appellate Division improperly exculpated Whisnant upon the alleged existence of an "emergency" without considering whether negligence on Whisnant's part created the "emergency" in which he found himself. (*Tapley* v. *Ross Theatre Corp.,* 275 N. Y. 144.) II. Plaintiffs offered affirmative evidence of negligence on Whisnant's part in that, at the time of the collision, Whisnant was operating his car at an excessive rate of speed and in a careless and inattentive manner. (*Mantione* v. *Picone,* 273 App. Div. 1049; *Martin* v. *Herzog,* 228 N. Y. 164; *Lee* v. *City Brewing Corp.,* 279 N. Y. 380; *Weigand* v. *United Traction Co.,* 221 N. Y. 39; *Sweet* v. *Perkins,* 196 N. Y. 482; *Rosenberg* v. *Schwartz,* 260 N. Y. 162.)

*Alexander Freiser* for Russell Boyle, appellant. I. Defendant-respondent was negligent as a matter of law. (*People* v. *Scanlon,* 132 App. Div. 528.) II. Defendant-respondent, Whisnant, was negligent in management, operation, and control of his vehicle. III. Verdict of $50,000 for Boyle is not excessive. IV. The charge to the jury was proper.

*John M. Aherne, Casper B. Ughetta* and *John J. Martin* for respondent. I. The De Soto driven by Bien was an aggressor, which suddenly left its westbound lane, cut across and through the eastbound traffic, and "looped" directly back into the path of the Whisnant car, creating a sudden and dangerous emergency for all eastbound traffic. Giving plaintiffs the benefit of every inference, there was no substantial evidence that Whisnant failed to act with reasonable care and promptness in the emergency created by Bien's gross negligence. As to Whisnant it was an inevitable accident. (*Duffield* v. *New York City Omnibus Corp.,* 259 App. Div. 647; *Zwilling* v. *Harrison,* 269 N. Y. 461; *Maranta* v. *Wenzelberg,* 241 App. Div. 420, 267 N. Y. 510; *Payne* v. *City of New York,* 277 N. Y. 393; *Kawacz* v. *Delaware, L. & W. R. R. Co.,* 259 N. Y. 166, 287 U. S. 659; *Platto* v. *Stier,* 282 App. Div. 242; *Woloszynowski* v. *New York Central*

*R. R. Co.,* 254 N. Y. 206; *Kumkumian* v. *City of New York,* 305 N. Y. 167; *Marra* v. *New York Central & H. R. R. R. Co.,* 139 App. Div. 707; *Gross* v. *Gross,* 169 F. 2d 199.) II. The Appellate Division properly ruled that the evidence was wholly insufficient in point of law to sustain a verdict. Whisnant's motion for a directed verdict should have been granted. The Appellate Division properly dismissed the complaints. (*Blum* v. *Fresh Grown Preserve Corp.,* 292 N. Y. 241; *Matter of Case,* 214 N. Y. 199; *Berner* v. *Board of Educ., Union Free School Dist. No. 1,* 286 N. Y. 174; *Russ* v. *Russ,* 263 N. Y. 625; *Iannone* v. *Weber-McLoughlin Co.,* 186 App. Div. 594; *Love* v. *Donald,* 264 N. Y. 418.) III. The contention that Whisnant was violating paragraph (c) of subdivision 2 of section 56 of the Vehicle and Traffic Law was not presented, litigated or decided at Trial Term. The Appellate Division, accordingly, refused to consider it. It is not open to the plaintiffs in this court. In any event it is without merit. (*Carlock* v. *Westchester Lighting Co.,* 268 N. Y. 345; *Tedla* v. *Ellman,* 280 N. Y. 124; *Boronkay* v. *Robinson & Carpenter,* 247 N. Y. 365.)

DESMOND, J. The dismissal of the complaints as against defendant-respondent Whisnant should be affirmed. The sudden, unanticipated and unexplained dash of the Bien car, across the highway and into Whisnant's path, made him the helpless victim of what was, beyond any dispute, an emergency with the creation of which Whisnant had nothing to do. Such violations as Whisnant may have been guilty of were no proof of negligent causation by him, since there was no possible logical connection between any of them, and the accident (see *Brown* v. *Shyne,* 242 N. Y. 176, 180; *Tedla* v. *Ellman,* 280 N. Y. 124; *Hagadorn* v. *Socony-Vacuum Oil Co.,* 298 N. Y. 882; *Goldblatt* v. *Tabacco,* 299 N. Y. 663; Restatement, Torts, § 286).

The judgment should be affirmed, with costs.

CONWAY, J. (dissenting). At about 11:30 P.M., on an evening in late August, a group of men, using three automobiles, were on their way down through Long Island to stay overnight at a hotel prior to participating in a tuna fishing tournament on the following day. The first car was 100 to 200 yards in advance of the second and the second about seventy-five feet in advance of the third. The Sunrise Highway, on which they were travel-

ing in an easterly direction, was a four-lane highway — two lanes going east and two lanes going west. The only defendant who appealed below, and who is respondent here, is Whisnant, the driver of the second car. The plaintiff Meyer was a passenger in that car. Whisnant was driving, according to a passenger in the third car, at the rate of about fifty miles per hour.

Just before the three cars reached Babylon Turnpike, an automobile driven by defendant Bien, Jr., and owned by his defendant father, was coming in the opposite or westerly direction, moved from the outside westerly lane across to the outside easterly lane, then came back into the inner easterly lane in which the three cars of the fishermen were moving and stopped there. The plaintiff Boyle was a passenger in that car.

The Bien automobile stopped just west of the intersection of Sunrise Highway and Babylon Turnpike. That intersection was controlled by a traffic light signal. So close to the west of that intersection was it that the Bien car stopped that Whisnant in his brief points out: '' The crossing [of the Bien car] was made near, if not at, an intersection controlled by a light where such crossings are normally made. There are several ' Diners ' and ' Grills ' on the southside of Sunrise Highway, just to the east of the point where the collision occurred. * * * As far as Whisnant was concerned the DeSoto [the Bien car] could have been making a normal turn to one of those establishments.''

When the Bien car was stopping, in the path of the three oncoming cars, the first car — the Felton car — turned out into the outer easterly lane and avoided it. The second car driven by Whisnant drove directly into it after it had stopped. The third car swerved to the right, pulled over and stopped, thus avoiding both cars.

Whisnant had been driving for one or two miles in the inside or left-hand easterly lane which, as he said, is '' the lane which you customarily use in passing other cars ''. While thus driving in that left-hand lane he could not recall whether he passed any cars. The right-hand traffic lane was not heavy. The Trial Justice properly charged, without exception: '' There is a law in our State applicable outside the City of New York which says that when you have more than one lane to travel in going in the same direction, the driver has a duty to stay in the right side

lane except for purposes of passing." To do otherwise is violative of the Vehicle and Traffic Law (§ 81, subd. 26) and is negligence. It would still be necessary for it to be a proximate cause of the accident. That was a jury question and the learned Trial Justice, without exception, left it as such to the jury. (See *Callahan* v. *Terminal Cab Corp.*, 259 N. Y. 112; *Cohen* v. *Goodman & Sons*, 189 App. Div. 209.)

The reversal in the Appellate Division was upon the ground that the testimony offered by plaintiffs (the defendant Whisnant offered none but rested on the plaintiffs' case) demonstrated that an emergency had been created unexpectedly and that thus the plaintiffs had failed to establish against Whisnant " any actionable negligence proximately causing the accident ". That, however, was for the jury to determine and the learned Trial Justice properly left it to the jury, without exception, as follows: " The law recognizes that an emergency situation is one in which quick thinking may be called for. Our laws and our rules of conduct are based upon ordinary human beings. We do not expect human beings to be superhuman. If we did, we would fail in that expectation. We do expect every human being, however, under the circumstances to be as good as the ordinary human being. He may not get away with being substandard, even if, in fact, he is in an emergency situation. On the other hand, we do not expect a man to act with the clearness, with the certainty, with the sureness that we would expect if he had time to think it over.

" One of the important things for you to decide is did that Bien car come into view so rapidly as not to give an opportunity for cool and collected thought, or did it happen in a snap. You will recall the testimony varies on it." The jury no doubt found that Whisnant had not conducted himself as the average human being, in view of the fact that the first and third automobile drivers avoided striking the Bien car while he drove straight into it. At one point in his testimony Whisnant said he did not see the car he collided with before the collision.

Whether there was an emergency as far as Whisnant was concerned was for the jury. According to his friend Holthusen, Whisnant was going fifty miles an hour in the easterly left-hand or passing lane. He was approaching an intersection with

Babylon Turnpike at that speed. That was an intersection controlled by a traffic light signal. In such a situation the proper speed was twenty miles an hour (Vehicle and Traffic Law, § 56, subd. 2). Whisnant had his "head down" and was driving and looking "straight ahead" with no regard for traffic or traffic signals or so a jury could properly find. He testified that he does not know whether he was approaching a traffic controlled intersection. He does not know whether there was a traffic controlled intersection there or not. He does not remember any traffic light, and does not remember seeing one. He was looking straight ahead. He testified that he did not think the roadway (Sunrise Highway) was lighted on both sides by light fixtures. He said that the last thing he remembered before the collision was when he was between ten and twenty yards from the point of collision and that was where he applied his brakes. That was when he saw the lights of the Bien car. That was less than one second before the collision, for an automobile moving at fifty miles an hour travels about seventy-five feet per second.

Even if there had been an emergency and Whisnant had taken action based upon it, that would not help him, for a driver of an automobile must exercise care to avoid reaching a point from which he is unable to extricate himself without colliding with another vehicle. If he fails in that, the greatest vigilance on his part when the danger arises will not avail him (Huddy's Cyclopedia of Automobile Law [9th ed.], Vol. 3-4, § 26; *Altenkirch* v. *National Biscuit Co.*, 127 App. Div. 307). Thus in *Rivisto* v. *Heller* (253 App. Div. 351) it was held to be reversible error to charge a jury that if they found defendant did all that a reasonably prudent person could do to avoid the accident *when she first saw the plaintiff*, the verdict must be for the defendant because "It eliminated from the jury's consideration her prior alleged acts of negligence, *which placed her in a position where the accident became inevitable*" (p. 352; emphasis supplied). (See, also, *Hood* v. *Stowe*, 191 App. Div. 614.) In Huddy's Cyclopedia of Automobile Law (*supra*, § 26, p. 57) it is put as follows: "* * * One cannot escape liability for the negligent operation of an automobile on the ground that he acted in an emergency, when it appears that the emergency was created by his own negligence; or if, by the exercise of reasonable care, he

might have avoided the injury notwithstanding the emergency.''

The principle is phrased as follows in American Jurisprudence (Vol. 5, Automobiles, § 171): '' Where the situation of peril arises because of the driver's own negligence, the emergency rule cannot be invoked in his behalf. * * * The sudden emergency doctrine is not an exception to the general rule; the question is whether the defendant acted as an ordinarily prudent and careful person would have done under the same circumstances, and the emergency is one of the circumstances contemplated by the rule.''

'' In view of the dismissal we must take the facts in a light most favorable to the plaintiff and, in determining whether the facts proved constitute a cause of action, give him the benefit of every favorable inference which may reasonably be drawn. (*Faber* v. *City of New York,* 213 N. Y. 411, 414; *Shuman* v. *Hall,* 246 N. Y. 51, 57.) '' (*Osipoff* v. *City of New York,* 286 N. Y. 422, 425.) Clearly then, there was a prima facie case of negligence established here as a matter of law, with no defense interposed. The jury under a careful charge found that the negligence was the proximate cause of the serious injuries sustained. The plaintiffs under our State Constitution were entitled to have their cases passed upon by a jury in view of the fact that they had established a prima facie case (*Imbrey* v. *Prudential Ins. Co.,* 286 N. Y. 434).

The judgment should be reversed and a new trial ordered, with costs to abide the event.

DYE, FULD and VAN VOORHIS, JJ., concur with DESMOND, J.; CONWAY, J., dissents in opinion in which LEWIS, Ch. J., and FROESSEL, J., concur.

Judgment affirmed.