Barbara J. NOTTIS, Plaintiff,

v.

Joseph POZOOR, Jr.,
and
United States of America, Defendants.
Civ. A. No. 6403.

United States District Court
W. D. New York.
Feb. 5, 1957.

Magavern, Magavern, Lowe & Gorman, Buffalo, N. Y. (John M. Gorman, Buffalo, N. Y., of counsel), for plaintiff.

Desmond & Drury, Buffalo, N. Y. (Edward J. Desmond, Buffalo, N. Y., of counsel), for defendant Joseph Pozoor, Jr.

John O. Henderson, U. S. Atty., Buffalo, N. Y. (Leo J. Fallon, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for defendant United States of America.

MORGAN, District Judge.

The plaintiff in this action was, at the time of the accident, April 14, 1954, a passenger in a 1950 Chevrolet Tudor Sedan, which was being driven by a friend of hers in a westerly direction on route 5, a public highway of the State of New York. That portion of route 5 between Dunkirk, New York, and Erie, Pennsylvania, was in an area of rolling country with dips and crests. The road was a two lane highway for one lane of cars going easterly and one going westerly. At the point of the impact, the road surface was divided by a double painted white line indicating no passing. At a point about six miles east of Barcelona, New York in the Town of Portland, Chatauqua County, while the said Chevrolet was travelling in a westerly direction at a rate of about fifty miles per hour behind a Chrysler, operated by the

witness Plumb, and in front of a one and one-half ton Chevrolet Army pickup truck, operated by one Sergeant Payne in the course of his employment by the defendant United States of America, the Buick Fordor Sedan, owned by the defendant Pozoor, came over the westerly crest of the dip at a speed of fifty to sixty miles per hour. The Buick was in the left, or north lane, although proceeding in an easterly direction. The defendant Pozoor stated in the deposition taken May 9, 1955 at the office of the defendant's attorney in Buffalo, New York (page 5) that the accelerator on his car was sticking. He was attempting to loosen it with his foot by racing the motor and kicking it. This did not bring the desired result and he testified "So I looked down and put by foot underneath it to raise it and when I looked back this car was running into me. So, I slammed on my brakes as soon as I seen it so I didn't know how far it skidded." The witness Plumb, who was operating the Chrysler in a westerly direction, as indicated above, turned to the right and on the shoulder and the wall on the northerly side of the road. Sergeant Payne, the witness Plumb and the witness Ethel Kolbe, who operated the Chevrolet all testified that they were unable to see more than one car ahead. The defendant Pozoor did not even see the car trailer of the witness Davis, who was proceeding in a westerly direction, nor the retaining wall on the north side of the road. After the Chrysler, belonging to the witness Plumb, was operated out of the path of the on-coming Buick, which was in the wrong, or north lane, by reason of the negligence of the defendant Pozoor, the Chevrolet operator, Ethel Kolbe, turned toward the north, or her right, and applied her brakes. The Chevrolet travelled up hill with brake applied about two car lengths and the Buick skidded 105 feet down hill into the Chevrolet with such force as to turn it to an angle of approximately forty degrees to the north (see plaintiff's exhibit 6). While in that position, the Army truck, following the Chevrolet at about forty to fifty miles per hour, was placed in an emergency, and in that emergency, the driver turned left, applied his brakes, travelled six feet, when the right front of his truck hit the left rear of the Chevrolet, causing the damage to the truck shown in plaintiff's exhibit 3, and to the Chevrolet, as shown in defendant's exhibits J and K. The result of the collision is well depicted in defendant's M.

The plaintiff suffered severe, painful and permanent injuries. She was hurled through the windshield of the Chevrolet (plaintiff's exhibits 5 and 9) causing visible injuries, as shown by plaintiff's exhibits 1 and 2. These injuries were described as being depressed compound fracture of skull and temporal bone with lacerated muscle in this region; cerebral concussion and hemorrhages with postconcussion syndrome; multiple lacerations of the face, including laceration which extended from just in front of the anterior portion of the left ear, forward, to the outer margin of the upper brow, then downward, completely through the upper left lid, across the nose to the upper brow of the right side down through both the upper and lower lids of the right eye ending in the cheek on the right side; multiple lacerations and fracture of the nose, the outer and inner portion of both lips and the center portion of the forehead, which lacerations have resulted in permanent and disfiguring scars; puncture and other injuries of the left eyeball, resulting in removal of the left eye; abrasions and lacerations of the right cornea, a piece of glass now remaining in the cornea; contused laceration of the left knee; other injuries to both knees; fractures and loss of 9 teeth; injuries to her right elbow and her back; extreme shock and nervous and emotional disturbances.

Plaintiff received emergency surgery at the Westfield Memorial Hospital on the day of the accident, and on the same day underwent surgery at the Hamot Hospital in Erie, Pennsylvania, for decompression of fracture of skull, suturing of facial lacerations and plastic repairs. She remained at the Hamot Hospital un-

der treatment from April 16, 1954 to April 30, 1954. She returned to that hospital May 13, 1954, for evisceration of the left eye and remained under treatment until May 22, 1954. She was confined to her home as a result of the injuries substantially all of the time while not in the hospital until approximately August 1, 1954, and to her bed until June 15, 1954. Her permanent injuries are: her left eye was eviscerated and she wears a prothesis, or artificial eye, which becomes painful and frequently has to be replaced. It is well balanced with the other eye as to color, but, according to Dr. Leslie Backus, a recognized specialist in plastic surgery, the depth of the artificial eye is greater, or more sunken into her face, than the normal eyeball, due to the fact that the laceration destroyed the globe of the eyeball and caused the tissues around the globe to atrophy. Also, the prothesis is recessed "a little bit and does not follow laterally." The doctor felt that no further treatment or procedure on this type of restoration should be encouraged. He did testify, however, that the following scars, namely one, a seven-eights of an inch area in the mid forehead over the inner aspect of the left eyebrow, which is an avulsion type of scar which had healed in because the skin was torn away; second, a three and one-half inch scar running from the mid line of her forehead across the inner aspect of the right eyebrow and across the entire length of the right upper eyelid; three, a two inch scar in the upper canthal region of the right lower eyelid and right cheek; fourth, a one-half inch scar of the right cheek in the nasal oval, that is, in the fold next to the nose, just lateral to the right rim of the nose; fifth, a one inch scar over the dorsum of her nose, the bridge of the nose; sixth, a two inch scar over the left temporal region and left outer canthal region; seventh, a one and one-fourth inch scar over the left cheek; eighth, a one inch scar over the left side of the upper lip through the vermillion or red portion of her lip which has resulted in an unusual fullness of the lip at this area; ninth, a flat scar over her left patella, the knee-cap, could be largely corrected from a cosmetic standpoint by plastic surgery, at an anticipated cost of approximately Seventeen hundred ($1700) dollars.

The plaintiff was 22 years of age at the time of the accident, a waitress with an earning record of $40 per week. In addition to the injuries above indicated, there was conscious pain and suffering. Her special damages amounted to Four thousand one hundred thirty-two and 05/100 ($4132.05) dollars. She was seriously, painfully and permanently injured, nor was she guilty of any contributory negligence. The negligence of the defendant Pozoor is apparent. He didn't see anything (page 6; page 12 of the deposition of May 9, 1955; defendant's exhibit S).

The motion of the defendant United States of America to strike that portion of the testimony of the witness Dr. William A. Shaefer, as to the second impact, is granted. The physician was not qualified in that field, admitted he was not an expert and, even if he were so regarded, his testimony as to the second impact being the sole cause of evisceration of the left eye, is neither credible nor has any probative force. The record, pages 60, 71, 82, and 218 indicate to the satisfaction of the court that Sergeant Payne had no potential vision of the cars above, or westerly of the Chevrolet. Even the witness Huth did not see the impact (page 82) and found it difficult to observe distance between cars (page 94). Huth was in a car following the Army truck and proceeding in a westerly direction and he couldn't see the impact ahead of him and couldn't answer as to brake lights on the Chevrolet (page 103). The witness Payne testified without contradiction (page 223) that he did not observe any brake signal or lights on the Chevrolet before he noted that it had stopped and, at page 236, he neither saw nor heard anything unusual before the accident. The witness Plumb, driving the Chrysler which was between the Chevrolet and the Buick, couldn't see the Army truck (page 243 through page 248) belonging to the witness Kenneth H.

Davis. On all the evidence, and as the trier of the fact, as well as the law, the court is convinced that the defendant Pozoor was negligent, the plaintiff Barbara J. Nottis was not guilty of contributory negligence and the defendant United States of America, through its agent Sergeant Payne, was not guilty of negligence. He was placed in a sudden emergency; was compelled to act instantly; and made such a choice as a person of ordinary prudence placed in such a position might make, as was said in American Jurisprudence, Volume 5, Automobiles, par. 171 (page 7, Government's brief #1). Applying the New York Law, the mere happening of the accident is not sufficient to prove negligence. This is equally true where a rear end collision is involved. Zwilling v. Harrison, 269 N.Y. 461, 199 N.E. 761.

The foregoing allusion to the facts is very brief. Having heard the testimony and carefully examined the briefs of the plaintiff, the defendant United States of America and the defendant Pozoor, as well as the entire record, I am convinced that the plaintiff failed to offer any creditable proof upon which the negligence of the defendant United States of America could be predicated. As the New York Court of Appeals said in Meyer v. Whisnant, 307 N.Y. 369, 121 N.E.2d 372, Sergeant Payne was the "helpless victim of what was, * * *, an emergency with the creation of which (Payne) had nothing to do." As Mr. Justice Van Voorhis said in McDonald v. Central School Dist. No. 3 etc., 179 Misc. 333, 39 N.Y.S.2d 103, at page 106, "There can be no doubt that in driving on busy thoroughfares operators of motor vehicles must take for granted the compliance with some standard of safe driving on the part of others; for example, if drivers did not assume that other drivers in meeting would pass to the right, traffic would come to a stand still."

█ The negligence of the defendant Pozoor was gross and wanton because it was not mere negligence, but also recklessly disregardful of right or consequences. Marra v. New York Cent. & H.

R. Co., 2d Dept., 139 App.Div. 707, 710, 124 N.Y.S. 443. Without his action, the injury would not have occurred. He created an unusual occurrence and not such as should have been foreseen by the defendant United States of America, through its agent Sergeant Payne. Leeds v. New York Telephone Co., 178 N.Y. 118, 70 N.E. 219.

1. The motion of the defendant United States of America, for judgment dismissing the complaint, is granted.

2. The counterclaim of the defendant United States of America against the defendant Joseph Pozoor, Jr., is dismissed.

3. The plaintiff Barbara J. Nottis is entitled to judgment against the defendant Joseph Pozoor, Jr., for his wanton and willful negligence, in the sum of Thirty-five thousand ($35,000.00) Dollars.

4. The motion of the defendant Joseph Pozoor, Jr., to dismiss the complaint as to him, is denied.

Prepare findings and judgment.