Joseph Liff, J.
The plaintiffs urge that in this action to recover damages for personal injuries there no longer remain any issues concerning negligence and contributory negligence and that they are entitled to summary judgment and a trial solely on the question of damages. Courts have been reluctant to grant .summary judgment in personal injury actions and usually there is one issue or another which requires a trial.
On this motion we have considered the affidavits of the respective parties; the testimony of the defendant driver at a hearing held in the Department of Motor Vehicles; the examinations before trial of the two drivers; the defendant driver’s motor vehicle report; and the police accident report. It appears that all circumstances of the occurrence have been explored and every version of what took place has already been supplied.
At about noon on the 5th day of June, 1965 the plaintiff Edward Whitely was driving in an easterly direction and the defendant driver, Bose Lobue, in a westerly direction, on Northern State Parkway. At the point where the accident occurred there were four lanes, two running in each direction, and opposing traffic was separated by an eight-foot grass divider contained within curbs. Immediately before the accident each of the drivers was in the lane closer to the divider. Mrs. Lo'bue was alone; Mr. Whitely’s two sons, then in their sixth and seventh years, were with him on their way to visit Mr. Whitely’s mother. It was a fine day. Near the point of the accident, east of the Hicks Road Bridge, the parkway was level and straight. Each of the .cars was traveling at a speed of at least 40 miles per hour and traffic was moderately heavy. Mr. Whitely first saw the defendant’s car beyond the Hicks Road Bridge or overpass. He says that at that time it was approximately 150 to 200 feet away; that he saw it again when it had passed through the overpass, and then, when he was 50 feet from the defendant’s vehicle, still traveling at approximately 40 miles per hour, he observed the front wheels of defendant’s automobile turn toward the left, cross the curb and the divider. He relates that as he looked to his right there were cars in that lane and that then he applied his brake and immediately the two left front portions of the vehicles struck. The plaintiff operator stated to the police officer who reported the accident that he “ could not move to right because of traffic and was struck head on by car #2.” The police officer who made the accident report states that the *757 front end of each of the cars was demolished, and in a sketch included in his report he indicates both cars wholly in the eastbound lane. This is confirmed by photographs in which Mrs. Lobue identified her motor vehicle in an examination before trial. On the day following the accident and while .still in the hospital she made a motor vehicle report in which she reported the cause of the accident as ‘‘ Unknown ’ ’.
At the hearing before the Referee in the Department of Motor Vehicles on November 3, 1965, she recited that she “ must have looked away for a moment and as I turned my head and looked forward at the traffic the car ahead of me must' have been very close. As I .sit in the cars now and see the brake lights go on I panic. This is what must have happened. I seen I was too close and my head went forward and I hit my face here. Here it is still numb here.” The Referee then continued his questions and she made answer as follows:
“ Q. You say that you were too close to the car, the car going in the opposite direction? A. In front of me.
“ Q. The car directly ahead of you going in the same direction? A. Yes.
“ Q. How close to it were you? A. Close enough for me to put the brakes on fast. I couldn’t tell how many feet still, it was close enough. I realized I couldn’t stop, I had to stop immediately and I had to put the brakes on with the the (sic) body lurched forward and I hit the glass and it probably stunned me because I recall going over — and as I said it was a bright sunny day and it seemed as though it was getting dark. For me to visualize darkness I must have been passing out.”
“ Q. This car directly ahead of you, Mrs. La Bue (sic), was that car moving ahead? A. It was moving, but had slowed down.
“ Q. Had you been following this other vehicle for any length of time? A. No, not all the — I turned away. How long does it take —
“ Q. Why did you turn away? A. When I drive I sometimes take my head away—
“ Q. Not if you are that close to another vehicle. A. No, at ■the time — before I turned my head it was probably not that close. He was not on top of me. But going at 40 m. p. h. I couldn’t stop, yet I didn’t hit him.”
On her examination before trial held December 19, 1966, Mrs. Lobue had lost almost all recollection of the accident except for the fact that there had been one. She confirmed her speed as *758 having been at least 40 miles per hour. When she was shown a photograph of the two cars following the accident, at one point failed to recognize her car though .shortly thereafter she did.
When questions were put to her concerning details of the accident and her earlier testimony before the Referee at the Department of Motor Vehicles, her answers were either that she did not remember or that .she did not know. Thus she not only did not recall the details of the accident but did not remember her testimony at the hearing.
From the foregoing the conclusion is inescapable that the defendant .driver was guilty of negligence in turning her attention from the roadway, and that act was the proximate cause for the events which followed.
However, we are .still left with the inquiry “as to whether reasonable precautions were used by plaintiff to avoid the accident ” (Blixton v. MacNary, 23 A D 2d 573, 574) and a negative answer would defeat his application, even if not those of the six- and seven-year-olds who were passengers.
At the moment when the left front wheel of the defendant driver’s vehicle struck the mall, the cars were traveling at a combined speed of not less than 80 miles per hour and at that speed the distance between them would have been covered in a second or less.
It had been the rule that proof of the sudden swerving of a car from the highway was not prima facie evidence of negligence (Gerard v. Inglese, 11 A D 2d 381) and this was extended to include a case where a car operated by the defendant jumped over a divider (Kosack v. Schiff, 13 A D 2d 819). However, since these decisions, the Court of Appeals in Pfaffenbach v. White Plains Express Corp. (17 N Y 2d 132, 135) rejected the rule in Galbraith v. Busch (267 N. Y. 230) and held that when nothing more is shown than that “ a vehicle comes over onto the wrong side of the road * * * a case of negligence is made out prima facie sufficient to go to the jury to determine liability ’ ’ and the explanation of the defendant would also be for the jury.
Now, when a driver leaves the proper lane of travel and enters the roadway of traffic going in the opposite direction, it is evidence prima facie of negligence and imposes the obligation on that driver to come forward with some explanation which would excuse his conduct. Defendant driver has failed to do so.
The question remaining is — did the plaintiff driver do what might have been done under the circumstances to avoid the accident ? Are we required to speculate on what he might have *759 done to avoid the collision or to pretend that an issue is raised thereby? Obviously he could not stop; to have accelerated might have made the impact more severe. He says that he looked to the right. Let us suppose that raises a question of fact as to whether or not he did. The Appellate Division in this Department, citing Breckir v. Lewis (21 A D 2d 546, 549, affd. sub nom. Breckir v. Pleibel, 15 N Y 2d 1027), recently held that a driver may not be charged with failing to avoid a motor vehicle which suddenly crosses into the flow of traffic opposite to that in which it was moving (Campbell v. Towber, 26 A D 2d 628, affd. 19 N Y 2d 844).
In Breckir v. Lewis (supra, p. 549) the First Department said: ‘1 The law has recognized certain factors in connection with automobile traffic on multiple-lane highways. The speeds permitted allow drivers a minimum of opportunity to avoid unforeseen contingencies and the width of the highways provides a maximum of opportunity for a driver to stay on his own side of the road. The consequence is that a driver in his proper lane is not required to anticipate that a car going in the opposite direction will cross over into that lane (Gooch v. Shapiro, 7 A D 2d 307, affd. 8 N Y 2d 1088). And the failure of a driver, not otherwise negligent, who meets such a car, to avert the consequence of such an emergency can seldom be considered negligent (Meyer v. Whisnant, 307 N. Y. 369).” And at page 550, after discussing what a driver confronted with an onrushing car in the wrong roadway might do, it observed: “ It could hardly be negligence, in the minimal time available, to fail to calculate the comparative risks involved and adopt the least dangerous course.”
In the fleeting moment which was left to him and in the distance which separated him from the defendant’s car we cannot find a reasonable basis for attributing negligence to him. All of the proof points to defendant driver’s negligence and plaintiff driver’s freedom from contributory negligence.
In Pfaffenbach v. White Plains Express Corp. (17 N Y 2d 132, 135-136, supra), the Court of Appeals stated that certain of the earlier rules had today 1 ‘ been sapped of all practical application to the real world of motor vehicle operation ’ ’ and the court continued on page 136 as follows: ‘ ‘ Rigidity of legal rules which piece together conduct in the management and control of a moving vehicle in separate compartments under ‘ negligent ’ and ‘ non-negligent ’ labels has not only failed to succeed as an instrument of adjudication; it has succeeded in confusing the business of deciding motor vehicle accident cases con *760 sistently. Modern experience suggests we can be less certain of the precision of our categories in this field of adjudication than we had confidently assumed a generation or so ago.”
An obligation rests upon the defendant to lay bare her proof. In the affidavit submitted in opposition to this motion she states that she was rendered unconscious as a result of the accident and does not remember the occurrence and seeks to disavow all other prior testimony and statements. She avers in the affidavit that she signed the motor vehicle report without any recollection of the accident and without reading it. She also alleges that she attended the hearing before the Motor Vehicle Bureau without advising her insurer. Shall we infer therefore that her testimony would have been different had she consulted with her insurer? She also says that the Referee at the hearing misinterpreted her testimony.
This court concludes that the negligence of the defendants was the sole proximate cause for the accident.
Plaintiffs’ motion is granted. The action will be placed on the pretrial calendar for the earliest available date for settlement discussion, or assignment for an assessment of damages, subject to the service upon the clerk of the Calendar Part of copies of the note of issue, statement of readiness, the order granting a general preference, and a copy of the order to be entered hereon.