JULIA POLLEY, as Administratrix of the Estate of ABE POLLEY, Deceased, Respondent, v. STANLEY POLLEY, Appellant.

First Department, June 28, 1960.

*John M. Cunneen* of counsel (*Caverly, Dimond, Dwyer & Lawler*, attorneys), for appellant.

*Robert H. Schaffer* of counsel (*Eugene J. Morris* with him on the brief; *Milton Schilback*, attorney), for respondent.

McNALLY, J.   Defendant appeals from a judgment in favor of plaintiff on the first cause of action for personal injuries, pain and suffering in the sum of $50,230.71, and on the second cause of action for death in the sum of $3,770.85, after trial before a court without a jury.

The action was commenced by the decedent in March, 1956 for personal injuries, pain and suffering alleged to have been sustained by him while a passenger of the motor vehicle owned and operated by his son Stanley Polley, the defendant herein. Following decedent's death in May, 1956, his widow Julia Polley,

as administratrix of his estate, was substituted as party plaintiff, and by an amended complaint a second cause of action for pecuniary damages resulting from the death was added.

Defendant was covered by a policy of public liability insurance. Apart from plaintiff administratrix, who is defendant's mother and the widow of decedent, defendant is the only next of kin and beneficiary of decedent.

The only evidence offered as to the sudden stop of his motor vehicle and the circumstances surrounding it was the testimony of defendant who was called as plaintiff's witness. He testified substantially as follows: On May 26, 1955, at or about 10:00 A.M., he was operating his motor vehicle in which his father, decedent herein, was seated beside him. Defendant braked the vehicle to a full stop a little more than halfway in the block from West End Avenue to Broadway at 72nd Street, Borough of Manhattan, in order to avoid striking a taxicab. Prior thereto he had been proceeding easterly along 72nd Street in the right-hand lane for eastbound traffic next to the lane occupied by parked cars at a speed of about 25 miles per hour, thus leaving clear for passing vehicles another eastbound lane to his left between his motor vehicle and the center of the street. Defendant's motor vehicle never moved out of its lane.

Defendant first noticed the taxicab as he was proceeding easterly in the right-hand traffic lane at a point a quarter of the length of the block or approximately 175 feet from the place where his motor vehicle came to a full stop. When first noticed, the taxicab was moving in the lane to the left of the lane in which defendant was proceeding and was behind him. The taxicab thereafter started to pass and cut in front of defendant. As the taxicab did so, defendant applied his brakes and stopped. There was no contact and defendant's motor vehicle came to a halt about five feet behind the taxicab.

The sudden stop allegedly caused the decedent to shift part of his weight to his leg or foot. Decedent immediately complained of a pain in his foot. He was taken to the family physician who had last examined him 15 days before the accident. A "pathological" fracture of the right fibula had occurred in 1930 or 1931 which had healed leaving a small swelling. There was a cystic area between both ends of the old fracture. Subsequent X rays disclosed swelling. Operative procedure followed; examination of removed tissues demonstrated sarcoma; metastasis followed, as did death, on May 5, 1956.

We hold there is no evidence of actionable negligence. The trial court held that the defendant saw the taxi driver proceeding with an empty cab and turning into the lane ahead of him;

that he saw a pedestrian on the sidewalk signal the driver of the cab and that defendant should have anticipated that the taxi driver would stop. In those circumstances the trial court found that "this was not an exercise of judgment which was faulty in the face of an emergency, but it was a failure to exercise any judgment whatsoever to the extent that it was the equivalent of negligence." We do not agree.

Defendant was faced with an emergency. The proof fails to show that he acted carelessly. Defendant was required to apply his brakes and he was not negligent in failing to do so sooner or with less force. In the circumstances he is not liable for failure to exercise the best judgment or for an error of judgment. (*Rowlands* v. *Parks,* 2 N Y 2d 64, 67–68.)

The applicable principle has been incisively stated in *Meyer* v. *Whisnant* (307 N. Y. 369, 371) as follows: "The sudden, unanticipated and unexplained dash of the Bien car, across the highway and into Whisnant's path, made him the helpless victim of what was, beyond any dispute, an emergency with the creation of which Whisnant had nothing to do. Such violations as Whisnant may have been guilty of were no proof of negligent causation by him, since there was no possible logical connection between any of them, and the accident (see *Brown* v. *Shyne,* 242 N. Y. 176, 180; *Tedla* v. *Ellman,* 280 N. Y. 124; *Hagadorn* v. *Socony-Vacuum Oil Co.,* 298 N. Y. 882; *Goldblatt* v. *Tabacco,* 299 N. Y. 663; Restatement, Torts, § 286)."

A further consideration of the proof shows the taxicab has never been identified; that defendant's operator's license required his use of corrective lenses in the operation of his motor vehicle. Defendant admitted that at the time of the occurrence he was not wearing his glasses. However, the trial court found, and we are in accord, there was no causal relation between the said omission and the occurrence.

Other than the defendant and the decedent, there were no eyewitnesses to the occurrence. There is no deposition of the decedent, and there is no official report or record of the occurrence. Defendant in the course of his examination before trial testified: "I was driving along and there was a taxicab driving in front of me and to my left (indicating), and obviously someone hailed the cab from the curb because he cut right in front of me, I imagine to stop for the call; and I stopped short." The clear implication of this testimony is the defendant concluded from the fact that the taxicab suddenly turned into his path that the operator of the taxi had been hailed by a person at the curb. At the trial, however, the defendant freely testified in detail that the taxicab was unoccupied; that he saw a person

hail the taxicab and that in response thereto the taxi turned towards the curb.

At one point in the trial defendant also testified: " Q. Now did you see anything happen to your father while you were stopping the car? A. No, because my attention was on the cab." At another point defendant also testified he did observe what happened to his father.

In the light of defendant's substantial pecuniary interest in the result of this litigation, his inconsistent testimony, the very brief interval and the tension generated by the sudden emergency incident to the alleged occurrence, we find that the defendant did not have the opportunity to nor did he observe the taxicab being hailed, and did not see what occurred to the decedent at the time he brought his motor vehicle to a stop.

The record supports the rejection of defendant's trial testimony on liability. (*Elwood* v. *Western Union Tel. Co.*, 45 N. Y. 549; *Wohlfahrt* v. *Beckert*, 92 N. Y. 490, 497; *Hull* v. *Littauer*, 162 N. Y. 569, 572–573; for a comprehensive analysis of the New York cases on " The Uncontradicted Testimony of an Interested Witness ", see 20 Cornell L. Q. 33.) We, therefore, find the defendant was confronted with an emergency when the taxicab suddenly and without prior notice to the defendant swerved into his path; that the defendant did not observe what occurred in respect of the decedent when defendant applied his brakes, and there is no factual basis for liability. In view of these findings, we are required by subdivision 2 of section 584 of the Civil Practice Act to grant the motion for judgment which the court below ought to have granted. (*Greater N. Y. Mut. Ins. Co.* v. *Perry*, 6 A D 2d 432, 437; *Calabria* v. *City & Suburban Homes Co.*, 5 A D 2d 983, affd. 5 N Y 2d 918; *Leonard* v. *Frantz Co.*, 268 App. Div. 144; 9 Carmody-Wait, New York Practice, § 177, p. 603.)

The judgment should be reversed, on the law and on the facts, and the complaint dismissed, with costs.

BOTEIN, P. J., BREITEL, RABIN and STEVENS, JJ., concur.

Judgment unanimously reversed, on the law and on the facts, and the complaint dismissed, with costs. Settle order.