*325 OPINION OF THE COURT
Bellacosa, J.
In 1980, Milton Rivera fell from the platform of the 42nd Street and 6th Avenue Manhattan subway station onto the tracks and was struck by an arriving train. He died several hours later. His widow sued the New York City Transit Authority (TA) for damages. After a trial, the jury returned a verdict in plaintiff’s favor, apportioning fault 15% against plaintiff’s decedent and 85% against defendant TA. The Appellate Division affirmed, with two Justices dissenting, and this appeal is taken as a matter of right.
 The theory of plaintiff’s case was that the subway operator was negligent in speeding into the station and in not taking measures to stop the train as soon as he first observed the decedent on the platform. The defendant TA contends principally on this appeal that the trial court erred in refusing its requested instructions on the emergency doctrine and foreseeability. This argument has merit and a new trial is required.
The parties’ factual dispute pivoted on the point at which the operator first saw decedent as the train approached the station and the point at which he released the emergency handle to stop the train. A related aspect was whether decedent had been standing steadily near the edge of the platform before he suddenly staggered and fell in one rapid motion, or whether the operator had observed Rivera staggering near the edge of the platform for a period of time prior to the fall.
A police report made shortly after the accident revealed that the operator stated he had "observed [a] male stumble then fall to the tracks after staggering.” The operator testified that he first saw Rivera from 30-60 feet away as Rivera *326 staggered from the platform onto the tracks, and that the operator immediately released the emergency brake handle. Prior to the arrival of the train, two witnesses who were also waiting on the platform observed decedent acting in an erratic manner, staggering, as if he were intoxicated or on drugs. One of these witnesses also saw the accident and testified that decedent had stood for 10-15 seconds at the edge of the platform looking toward the tunnel from which the train arrived and that decedent was not staggering during that time and did not appear unsteady at all. The witness confirmed that the train was about 30-40 feet away when Rivera fell onto the tracks. He testified that the incident happened so quickly he was unable to look away to avoid seeing the impact. The autopsy disclosed no evidence of alcohol or drug use and the experts were unable to determine the cause of decedent’s behavior or fall.
Experts for both sides testified that the train had entered the station at approximately 20 miles per hour. At trial, the operator put the range at approximately 15-25 miles per hour. Plaintiff’s transportation engineer expert opined that it is negligent to operate a train at more than 15 miles per hour upon entering a station. He concluded that the train’s excessive speed when it entered the station, combined with the delay in simply failing to release immediately a handle for emergency braking, caused the accident. Based on his calculations that the operator must have seen decedent in ample time to avoid the impact, he added that the operator should have been able to stop the train before it struck the decedent. Defendant’s civil transportation engineer expert concluded that the train entered the station at a reasonable speed and that the accident was unavoidable. It was established that a train moving at 20 miles per hour would travel 100 feet (30 feet per second) after the emergency brake is activated; at 15 miles per hour, it would cover 48-60 feet. Defendant’s expert testified that based on the eyewitness accounts, the operator would not have had the time or distance to prevent the train from striking the decedent after the sudden fall onto the tracks.
Viewing the evidence, as we must, in the light most favorably towards giving the requested emergency doctrine instruction to the jury, we conclude that it was reversible error for the trial court to deny the TA’s request (Ferrer v Harris, 55 NY2d 285, 293, remittitur amended 56 NY2d 737; see also, Mas v Two Bridges Assocs., 75 NY2d 680, 686-687; PJI 2:14). *327 This doctrine recognizes that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context (Amaro v City of New York, 40 NY2d 30, 36; Rowlands v Parks, 2 NY2d 64, 67; see also, PJI 2:14). A person in such an emergency situation "cannot reasonably be held to the same accuracy of judgment or conduct as one who has had full opportunity to reflect, even though it later appears that the actor made the wrong decision” (Prosser and Keeton, Torts § 33, at 196 [5th ed]; see also, Amaro v City of New York, supra, at 36). A party requesting the emergency instruction is entitled to have the jury so charged if some evidence of a qualifying emergency is presented. If, under some reasonable view of the evidence, an actor was confronted by a sudden and unforeseen occurrence not of the actor’s own making, then the reasonableness of the conduct in the face of the emergency is for the jury, which should be appropriately instructed (Ferrer v Harris, 55 NY2d, supra, at 292-293).
The evidence in this case presents a person, awaiting the arrival of the train, suddenly and unexpectedly falling off the platform and onto the tracks. In light of defendant’s expert’s testimony that the operator was driving the train at a reasonable and prudent speed upon entering the station, the jury — if it believed that witness — could reasonably have concluded that the train was not traveling at an excessive speed and that the accident was unavoidable. Evidence was also adduced indicating that an operator entering the station can observe passengers within only 3Vi feet of the edge of the platform. Thus, a reasonable view of the evidence could support the conclusion that the accident was sudden and unexpected in that when the operator first saw Rivera he was standing normally near the edge of the platform but then staggered and fell onto the tracks without warning. A disinterested eyewitness confirmed these key details. Despite some conflicting testimony from other witnesses, the jury could reasonably have concluded that the operator released the brake handle as soon as he observed decedent’s sudden, inseparable act of staggering and falling. The entire incident unfolded within seconds, during which flash of time the operator had to assess, deliberate, consider alternatives, and react to attempt to make *328 the safest and speediest choice. The operator, in addition to everything else, also had to be mindful of the consequences to passengers on his train if the train were subjected to a sudden emergency stop.
Thus, whether the train was traveling at a reasonable speed, whether the operator responded reasonably under all the circumstances, and whether the situation qualified as an emergency are all aspects on which the jury should have been instructed in the context of the emergency doctrine, because it could have resolved the case one way or the other depending on its acceptance in whole or part of the contested evidence and varying inferences. The emergency doctrine is thus plainly and centrally relevant and appropriate in this case. The jury, for example, had to resolve whether the accident was unavoidable, or whether the collision and fatal injury were caused by either the operator’s excusable error or misjudgment in an emergency situation, or by his inexcusably negligent act in contributing to the creation of the emergency. To be sure, the actor will not ordinarily be excused when the emergency has been created by that person’s own negligence and the jury should have been instructed in that balanced particular as well (see, Ferrer v Harris, 55 NY2d, supra, at 293; see also, PJI 2:14; Prosser and Keeton, Torts § 33, at 197 [5th ed]). In all events, moreover, the trial court’s grant of the requested emergency instruction would by no means have constituted anything close to a directed verdict for the defendant TA. Rather, it would have provided a fair and balanced backdrop for the jury’s deliberations on this case in its realistic and full context.
The scientific or arithmetical retrospective computation by plaintiff’s expert that, theoretically, the operator had adequate seconds to observe the passenger and stop the train to avoid this human collision does not, in law, eliminate the defendant’s entitlement in this case to have the jury instructed on how to assess the reasonableness of the particular response and judgment used by the TA’s operator in an emergency setting. The plaintiff’s theory of the case, after all, is that the train’s excessive speed and the operator’s delay in releasing the emergency brake handle negligently caused the accident. Thus, the jury should have been instructed that it could evaluate the operator’s response in the framework of the continuum of time from when he was first able to observe the plaintiff’s decedent until the brake was activated (see, Ward v F. R. A. Operating Corp., 265 NY 303; Lewis v Long Is. R. R. *329 Co., 162 NY 52, 62; Polley v Polley, 11 AD2d 121, affd 9 NY2d 1006).
In that legal causation context of this case, we note also that the trial court should have instructed the jury on foreseeability, as requested by defendant. The question of foreseeability is usually for the jury to resolve, with proper and full instructions, when, as here, varying inferences may be drawn from the facts and evidence (see, Kriz v Schum, 75 NY2d 25, 34; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315). Whether defendant legally caused Rivera’s injury and death depends upon whether they were reasonably foreseeable risks stemming from defendant’s conduct. If the operator could not reasonably foresee the injury as a result of his actions in the over-all context of this particular fact pattern, or if his conduct was reasonable and proportionate to the danger he could anticipate, defendant may be excused or found not liable by a fact finder (see, Danielenko v Kinney Rent-A-Car, 57 NY2d 198, 204). The issues regarding the point at which the operator first saw Rivera, how Rivera was acting prior to the fall, and the reasonableness of the operator’s response in releasing the emergency brake handle in proportion to the danger to be perceived, were contested by sharply conflicting evidence at trial. The Trial Judge therefore miscued in concluding that "[t]his is not a foreseeability case” and erred in failing to give the requested instruction.
Inasmuch as a new trial is required, we note that the trial court should not have admitted into evidence the defendant’s entire internal rule book and manual containing irrelevant material which was not relied upon by the parties’ experts or which imposed a higher standard of proof on defendant than that imposed by law (see, Crosland v New York City Tr. Auth., 68 NY2d 165, 168-169).
Finally, defendant’s further contention seeking dismissal for failure to present a prima facie case is without merit and was correctly decided by the courts below.
Accordingly, the order of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.