■ AUDREY SONNTAG et al., Appellants, v DOR-VAC CORP. et al., Respondents. [596 NYS2d 162] —In an action to recover damages for personal injuries, etc., the plaintiffs appeal from a judgment of the Supreme Court, Nassau County (Collins, J.), entered April 25, 1990, which, upon denying their motion to set aside a jury verdict in favor of the defendants as against the weight of the evidence, dismissed the complaint.

Ordered that the judgment is affirmed, without costs or disbursements.

A van operated by the defendant Anthony P. Campana and owned by the defendant Dor-Vac Corp. struck and injured the plaintiffs as they were attempting to cross the three southbound lanes of Route 107 in Hicksville, New York. Campana testified that he was traveling in the extreme left lane. He observed the plaintiffs traversing his lane when he was approximately 900 feet away from them. Campana, who had been traveling at between 30 and 35 miles per hour, decelerated and observed the plaintiffs move into the middle lane. However, when Campana was approximately 60 to 70 feet north of the plaintiffs, they "backpedaled" into his lane and were again in front of his van. Apparently, the plaintiffs were trying to avoid vehicles in the middle and right southbound lanes. Although Campana slammed on the brakes, he could not avoid striking the plaintiffs.

The evidence further established that the plaintiffs were attempting to cross at the point where Route 107 intersects with the entrance to the Mid-Island Shopping Plaza. Campana testified that the lights at the intersection were in his favor.

Over the plaintiffs' objection, the court instructed the jury

that they could consider whether Campana was faced with an emergency *(see,* PJI 2:14). The plaintiffs contend that this was error. We disagree. Viewing the evidence in a light most favorable to the defendants, "it is more than conceivable that a jury could conclude that this defendant was faced with an emergency" when the plaintiffs abruptly changed direction and returned to a point that was directly in front of his van *(Ferrer v Harris,* 55 NY2d 285, 292, *amended on other grounds* 56 NY2d 737; *see also, Rivera v New York City Tr. Auth.,* 77 NY2d 322, 326-327). It was therefore proper for the court to charge the jury concerning the effect of an emergency on the reasonableness of the defendant's conduct *(see, Bochnak v Mackes,* 159 AD2d 882; *McGloin v Austin,* 89 AD2d 583, *affd* 58 NY2d 731).

The plaintiffs' remaining contention is without merit *(see, Nicastro v Park,* 113 AD2d 129, 134-135). Mangano, P. J., Balletta and Copertino, JJ., concur.

Lawrence, J., dissents and votes to reverse the judgment, reinstate the complaint, grant the plaintiffs' motion to set aside the jury verdict, and grant a new trial, with the following memorandum: In my view, an emergency charge was not warranted. Moreover, this error was exacerbated when the court failed to explain to the jury how the emergency doctrine should be applied to the contested factual issues in this case. Indeed, a fuller review of the facts is necessary to understand this appeal.

As the majority notes, the plaintiffs were injured when a van operated by the defendant Anthony Campana and owned by the defendant Dor-Vac Corp. struck them as they were attempting to cross the southbound lanes of Route 107, a/k/a Broadway, opposite the Mid-Island Shopping Plaza in Hicksville, New York. The road has three lanes in each direction, separated by a median. At the time of impact, the plaintiffs were near a marked crosswalk adjacent to a four-lane exit for the shopping plaza's parking lot. A traffic light controls vehicular traffic on the road and exiting from the shopping center parking lot. However, the side of the traffic light facing the plaintiffs was blocked out, so that the plaintiffs could not see its signals. Excerpts from the hospital records of the plaintiffs, who were 37 and 67 years old at the time of the incident, confirmed that they could not remember any details of the accident.

A witness to the accident, Andrea Mulder, was in her car waiting to exit from the parking lot, at a distance of about 20 to 30 feet from the two plaintiffs and a second woman. Mulder

wanted to make a right turn on red onto Route 108, but decided to wait because she didn't know what the plaintiffs and the woman "were going to do". Mulder saw the second woman run across the road when there was a break in traffic, while the plaintiffs remained behind on the median, "stepping up and down the curb". So, Mulder continued to wait. When the plaintiffs "saw a clear [sic] in the traffic", they started across the road "to about the middle of the road". According to Mulder, the plaintiffs noticed the defendants' van coming in the middle lane and they began to run backwards towards the median. Mulder heard the van's brakes but did not hear any horn sounds. Mulder reported that the van veered left and struck the plaintiffs in the left lane.

The defendant Campana, who drove this road to work every day, testified to the contrary that he was in the extreme left lane traveling between 30 and 35 miles per hour when he first observed the plaintiffs approximately 900 feet away. At this point, Campana took his foot off the gas and "rested" it on the brake, without pressing hard. Campana admitted that he was aware that there was a car traveling alongside him in the middle lane and another vehicle about a half a car length ahead of him in the right lane. Campana's passenger, Paul Hislop, noted that the van was about 50 yards away from the intersection with the shopping plaza when he was able to discern whether the people were male or female. At this time, Hislop said that one woman was about three quarters of the way across the road and the other two (the plaintiffs) were "not far behind". By the time that the first woman reached the other side of the road the others "were in the middle lane of the southbound lanes".

According to Campana, he saw the plaintiffs stop for about a second in the middle lane. He said he was just entering the intersection of the shopping plaza approximately 60 to 70 feet north of the plaintiffs, and traveling at approximately 20 miles per hour, when the plaintiffs retreated into his lane. Campana allegedly slammed on the brakes and veered to the left, but the vehicle continued moving through the entire intersection striking the plaintiffs. Previously, at his deposition, Campana had stated that the van struck the plaintiffs about 10 feet south of the crosswalk. Hislop estimated that the van entered the intersection of the mall at a speed of 25 to 30 miles an hour.

Based upon the foregoing facts, in my view the court erred in issuing an emergency charge. Under the emergency doctrine, "when an actor is faced with a sudden and unexpected

circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context" *(Rivera v New York City Tr. Auth.,* 77 NY2d 322, 327). "A party requesting the emergency instruction is entitled to have the jury so charged if * * * under some reasonable view of the evidence, an actor was confronted by a sudden and unforeseen occurrence not of the actor's own making" *(Rivera v New York City Tr. Auth., supra,* at 327; *see also, Ferrer v Harris,* 55 NY2d 285, 292-293).

However, the charge should not be given if the "emergency" is one which the actor should have anticipated and been prepared to meet, as in certain routine traffic accidents *(see, McCarthy v Miller,* 139 AD2d 500). In this regard it is notable that, under the Vehicle and Traffic Law, drivers have a general duty to exercise due care to avoid colliding with any pedestrian (Vehicle and Traffic Law § 1146) as well as a duty to drive at a reasonable and prudent speed "under the conditions and having regard to the actual and potential hazards then existing" (Vehicle and Traffic Law § 1180 [a]). "Thus, under present day traffic conditions, any driver of an automobile must be prepared for the sudden appearance of obstacles and persons in the highway, and of other vehicles at intersections, just as one who sees a child on the curb may be required to anticipate its sudden dash into the street, and his failure to act properly when they appear may be found to amount to negligence" (Prosser and Keeton, Torts § 33, at 197 [5th ed]). It follows that "the emergency rule should not be charged in an intersection accident case in the absence of special facts justifying such charge" *(Voleshen v Coles,* 60 AD2d 468, 471; *see also, Aldrich v Madison Taxi,* 49 AD2d 1012).

In the instant case, viewing the evidence in the light most favorable to the defendants, there was no credible evidence that Campana was "confronted with a 'sudden and unforeseen condition' " rather than "by a common occurrence that should have been anticipated by [a] reasonable and prudent perso[n]" *(Runfola v Bryant,* 127 AD2d 972, 973). The record clearly shows that Campana saw the plaintiffs, both on the median and in the middle of the road, in ample time to assess the situation, sound his horn, and exercise reasonable care to avoid injuring them. Considering that Campana was familiar with the area and was aware that other vehicles were in the

lanes to his right, he should have been prepared for the possibility that the plaintiffs might not be able to cross the three lanes and would be forced to retreat to the median.

Moreover, the error in issuing the emergency charge was compounded by the court's failure to relate those principles to the facts herein and by the general lack of specificity in the over-all charge. As the Court of Appeals has emphasized, "mere abstract propositions of law" applicable in negligence cases

" 'should not be given unless * * * made applicable to the issues in the case at bar * * *

" '[i]t is imperative *to state and outline separately the disputed issues of fact, as the nature of the case and the evidence may require.* Without this kind of guidance the proceedings will not result in an intelligent verdict' " *(Green v Downs,* 27 NY2d 205, 208-209, quoting McBride, Art of Instructing the Jury § 4.18, at 143). Thus, I would reverse and order a new trial *(see, McCarthy v Miller,* 139 AD2d 500, *supra; Avila v Mellen,* 131 AD2d 408, 409).