96 N.Y.2d 172 (2001)
750 N.E.2d 36
726 N.Y.S.2d 334
ANTOINETTE CARISTO et al., Appellants,
v.
AUGUSTINE SANZONE et al., Respondents.
Court of Appeals of the State of New York.
Argued February 6, 2001.
Decided April 3, 2001.
DiJoseph & Portegello, P. C., New York City (Arnold E. DiJoseph, III, of counsel), for appellants.
*173 O'Donnell & McLaughlin, Staten Island (Alan M. McLaughlin of counsel), for respondents.
*179 Chief Judge KAYE and Judges LEVINE, CIPARICK and WESLEY concur with Judge GRAFFEO; Judge ROSENBLATT dissents and votes to affirm in a separate opinion in which Judge SMITH concurs.

OPINION OF THE COURT
GRAFFEO, J.
The issue in this motor vehicle accident negligence case is whether the trial court erred in charging the jury on the emergency doctrine. Under the facts presented, we conclude that defendants were not entitled to this instruction.
At approximately 9:00 A.M. on the morning of the accident, defendant Augustine Sanzone was driving a vehicle owned by his wife, defendant Patricia Cinquemani, on Foster Road in Staten Island. At the same time, plaintiff Antoinette Caristo was operating her automobile on Woodrow Road. Foster Road terminated at a "T" intersection with Woodrow Road, and a stop sign controlled the flow of traffic from Foster Road onto Woodrow Road.
At trial, Sanzone testified that the weather conditions at 7:00 A.M. that day consisted of snow, rain and freezing rain. This mixed precipitation was unchanged when he and his family left their home at approximately 8:30 A.M. By the time he drove to Foster Road, the weather had worsened. He described the conditions as "more like frozen rain and hail at the time." The temperature that morning was established, by stipulation of the parties, at 22 degrees Fahrenheit.
After cresting an incline on Foster Road, Sanzone proceeded downhill toward the Woodrow Road intersection, traveling at 20 to 25 miles per hour. At this juncture, his vehicle began to *174 slide and he noticed there was "a sheet of ice" on the hill. Despite Sanzone's effort to pump the brakes, the vehicle slid 175 to 200 feet, past the stop sign and into Woodrow Road. As plaintiff approached the intersection at 15 to 20 miles per hour and saw defendants' vehicle, she attempted to swerve to avoid a collision, but was unsuccessful. Both Cinquemani and the police officer who responded to the scene of the accident confirmed the icy conditions on Foster Road. Neither plaintiff nor Sanzone experienced difficulty controlling their vehicles prior to this incident.
Over plaintiff's objection, the trial court charged the jury on the emergency doctrine. The jury returned a verdict in favor of defendants and the trial court entered a judgment dismissing plaintiff's complaint. The Appellate Division affirmed the judgment, with two Justices dissenting (274 AD2d 406). Plaintiff now appeals as a matter of right.
More than a century ago, this Court first considered the reasonableness of an actor's conduct when confronted with a sudden emergency situation (see, Wynn v Central Park, N. & E. Riv. R. R. Co., 133 NY 575). Since then, we have articulated and applied the common-law emergency doctrine which "recognizes that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context" (Rivera v New York City Tr. Auth., 77 NY2d 322, 327), provided the actor has not created the emergency.
The rationale for this doctrinethe need to instruct a jury that it may consider the reasonableness of a party's conduct in light of the unexpected emergency confronting that personhas been somewhat eroded by the evolution from contributory negligence to comparative negligence. With the advent of the ability of juries to allocate fault and apportion damages, the viability of the doctrine has been questioned by some jurisdictions, with a few states going so far as to abolish it (see generally, Annotation, Modern Status Of Sudden Emergency Doctrine, 10 ALR5th 680).
In New York, in addition to the elements of the charge, we have defined the role of the Trial Judge in assessing the propriety of an emergency charge request. We require the *175 Judge to make the threshold determination that there is some reasonable view of the evidence supporting the occurrence of a "qualifying emergency" (Rivera v New York City Tr. Auth., supra, 77 NY2d, at 327). Only then is a jury instructed to consider whether a defendant was faced with a sudden and unforeseen emergency not of the actor's own making and, if so, whether defendant's response to the situation was that of a reasonably prudent person (see, PJI 2:14 [3d ed]). The emergency instruction is, therefore, properly charged where the evidence supports a finding that the party requesting the charge was confronted by "a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration" (Rivera v New York City Tr. Auth., supra, 77 NY2d, at 327; Kuci v Manhattan & Bronx Surface Tr. Operating Auth., 88 NY2d 923, 924; see also, Restatement [Second] of Torts § 296).
Here, even considering the evidence in a light most favorable to defendant (see, Kuci v Manhattan & Bronx Surface Tr. Operating Auth., supra, 88 NY2d, at 924), we hold as a matter of law that there was no qualifying event which justified issuance of the emergency instruction. Given Sanzone's admitted knowledge of the worsening weather conditions, the presence of ice on the hill cannot be deemed a sudden and unexpected emergency. Although Sanzone did not encounter patches of ice on the roadways before losing control of his vehicle, at the time of the accident the temperature was well below freezing and it had been snowing, raining and hailing for at least two hours. As such, there was no reasonable view of the evidence that would lead to the conclusion that the ice and slippery road conditions on the Foster Road slope were sudden and unforeseen. Defendants were not, therefore, entitled to an emergency instruction and the charge to the jury constituted reversible error under these circumstances.
The dissent contrasts our holding here with Ferrer v Harris (55 NY2d 285), where we concluded defendant was entitled to an emergency doctrine charge. Ferrer is clearly distinguishable in that defendant was confronted by an unanticipated event when a four-year old child ran in front of his vehicle from between two parked cars. The qualifying emergencya child darting from a sidewalk into street trafficis simply not analogous to the presence of ice and slippery conditions following at least two hours of inclement weather with temperatures well below freezing.
*176 Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial ordered.
ROSENBLATT, J. (dissenting).
By holding it was error to charge the emergency doctrine, the majority concludes as a matter of law that defendant expected to encounter a 175 to 200 foot sheet of ice while driving on an otherwise ice free road. In my view, it was for the jury, and not the court, to determine whether this sheet of ice was "unforeseen." I agree that the emergency doctrine should not be charged merely for the asking; nor should it be charged in every foul weather fender-bender case. But here the charge was justified. Accordingly, I dissent.
Because we are required to view the evidence most favorably toward the party requesting the emergency instruction (see, Kuci v Manhattan & Bronx Surface Tr. Operating Auth., 88 NY2d 923, 924), we must accept the following: First, defendant drove onto a sheet of ice 175 to 200 feet long. Second, the character of the ice was such that, despite his efforts to stop the car, he slid the entire 175 to 200 foot distancea journey approximately two-thirds the length of a football field. Third, defendant was unable to see the sheet of ice until he was upon it. Fourth, defendant was driving only 20 miles per hour when he encountered the ice. Fifth, although the weather was bad (rain, snow, sleet and freezing temperatures), neither plaintiff nor defendant had encountered ice in the vicinity. In my view, this raises a question of fact as to whether defendant was confronted with an emergency.
It is settled law that an emergency doctrine charge must be given if, under some reasonable view of the evidence, the party requesting it was confronted with a "qualifying emergency" at the time of the alleged tortious conduct (Rivera v New York City Tr. Auth., 77 NY2d 322, 327). A "qualifying emergency" is a "sudden and unforeseen occurrence not of the actor's own making" (Rivera, supra, 77 NY2d, at 327 [citing Ferrer v Harris, 55 NY2d 285]). Given these facts, the jury could reasonably have concludedas they obviously didthat encountering this enormous sheet of ice was "a sudden and unforeseen occurrence." Over the course of a lifetime, few winter drivers will ever encounter an ice hazard of that magnitudelet alone when the roads are otherwise free of ice. Accordingly, the trial court properly gave the charge. In doing so, it did not conclude that an emergency existed. It merely ruled that, on the evidence *177 presented, the existence of an emergency was debatable and allowed the jury to resolve the point.[1]
Charging the emergency doctrine simply reminds the jury that it must consider the reasonableness of a party's actions in light of the existing circumstances (see, Ferrer v Harris, supra, 55 NY2d 285, 292, citing Wagner v International Ry. Co., 232 NY 176, 182 [Cardozo, J.]).[2] As we noted in Rivera, giving the emergency doctrine instruction is "by no means" a directed verdict for the party requesting it (Rivera, supra, at 328) or even a declaration that there was an emergency. Rather, the jury still has the final say as to whether there actually was an emergency and, if so, whether the party reacted to it reasonably (cf., Rodriguez v New York State Thruway Auth., 82 AD2d 853, 854 [party's actions still unreasonable even though he was confronted with an emergency]).
In Ferrer v Harris (supra, 55 NY2d 285, 290-291), defendant was driving his car 20 miles per hour on a block filled with children. Plaintiff, a young girl, darted into the street and was *178 struck by defendant's car. Defendant testified that he saw children playing on the sidewalk before the accident. He even admitted seeing plaintiff step between two parked cars seconds before she darted (Ferrer v Harris, supra, 55 NY2d, at 290-291). The trial court refused the emergency doctrine charge. We held that the trial court's failure to charge it was reversible error because "it [was] more than conceivable that a jury could conclude that this defendant was faced with an emergency" (see, Ferrer v Harris, supra, at 292).
More recently, in Rivera, we again reversed for failure to give the emergency doctrine charge. We concluded that "the jury * * * could reasonably have concluded" that the accident was sudden and unexpected (see, Rivera, supra, 77 NY2d, at 327). Indeed, we have consistently authorized if not required the charge so as to allow the jury to resolve whether an emergency occurred and whether the party's actions were reasonable in the face of it (see, Kuci v Manhattan & Bronx Surface Tr. Operating Auth., supra, 88 NY2d 923, 924 [trial court committed reversible error by failing to charge emergency doctrine because driver testified that he "did not anticipate being suddenly cut off by this particular car"]; Mas v Two Bridges Assocs., 75 NY2d 680, 686 [upholding trial court's emergency doctrine charge because "we think that on the evidence in this case the emergency was not dissipated * * * as a matter of law, and that the question was properly submitted to the jury"]; Amaro v City of New York, 40 NY2d 30, 37 [emergency charge was properly given]).
I recognize that retention of the emergency doctrine has been under discussion nationally and that some jurisdictions have altered or abolished it.[3] The doctrine, however, is still a part of New York law. That being so, I submit that the trial court and the Appellate Division correctly applied it.
The trial court and the Appellate Division majority concluded that the matter was at least arguable, which is to say that there was "some reasonable view of the evidence" that defendant was confronted with an emergency. The jury went even beyond that; as fact finders they concluded that defendant was indeed confronted with an emergency and his actions were reasonable in light of it. Their verdict does not strike me as irrational. Accordingly, I would affirm the order of the Appellate Division.
Order reversed, etc.
NOTES
[1] Courts in other jurisdictions have held that the emergency charge should have been given in factually similar circumstances (see, Trujillo v Baldonado, 95 NM 321, 322-323, 621 P2d 1133, 1134-1135 [1980] [although defendant may have anticipated isolated patches of ice, question of fact existed as to whether defendant anticipated the "sheet of ice" upon which she lost control and collided with plaintiff's car]; Ballard v Rickabaugh Orchards, 259 Ore 200, 204, 485 P2d 1080, 1082 [1971] [on a cold stormy morning, plaintiff was driving 25 miles per hour over icy road and lost control when she tried to avoid a stopped truck]; Tennyson v Bandle, 181 NW2d 687, 690-691 [ND 1970] [defendant's car hit a slippery patch of ice on a decline as he approached a stop sign going 15 miles per hour and defendant had not previously encountered ice]; Francis v Beiber, 10 Ohio St 2d 65, 69, 225 NE2d 251, 254-255 [1967] [upon coming over a crest in the road that was "icy and snowy," defendant lost control of her car and it struck nearby parked cars]; Poe v Pittman, 150 W Va 179, 182-183, 144 SE2d 671, 674-675 [1965] [plaintiff's truck was descending along a snow and ice-covered road and lost control]; Keiffer v Strbac, 349 P2d 6, 7 [Okla 1960] [on a snowy and freezing afternoon, defendant's car hit an ice patch on a highway, skidded out of control and overturned]; Ormsby v Frankel, 54 Conn App 98, 100, 734 A2d 575, 579 [1999] [without warning, defendant's car hit a 250-foot ice patch on a highway]; Davis v Najm, 120 Ohio App 421, 425, 203 NE2d 252, 256 [1963] [defendant was driving car at night on "icy, snowy, slippery highway" and was confronted by a car driving at him head on]; but see, Moore v Spangler, 401 Mich 360, 383, 258 NW2d 34, 44 [1977] [emergency instruction was improper because "even if we were to accept defendant's testimony that the pavement was in fact icy, such a condition would not be `unusual' for a January day in Michigan"]).
[2] See also, Prosser and Keeton, Torts § 33, at 197 (5th ed); 3 Harper, James and Gray, Torts § 16.11, at 487-488 (2d ed); PJI 2:14 (3d ed); 5A Warren's New York Negligence, Liability for Negligence in Operation of Automobile § 8.01 (10), at 196-206.
[3] See generally, 1 Dobbs, Torts § 132, at 307-308; Prosser and Keeton, supra, at 197; Note, Wiles v Webb: The Abrupt End of the Sudden Emergency Doctrine in Arkansas, 51 Ark L Rev 833 (1998).