Rosenblatt, J.
(dissenting). By holding it was error to charge the emergency doctrine, the majority concludes as a matter of law that defendant expected to encounter a 175 to 200 foot sheet of ice while driving on an otherwise ice free road. In my view, it was for the jury, and not the court, to determine whether this sheet of ice was “unforeseen.” I agree that the emergency doctrine should not be charged merely for the asking; nor should it be charged in every foul weather fender-bender case. But here the charge was justified. Accordingly, I dissent.
Because we are required to view the evidence most favorably toward the party requesting the emergency instruction (see, Kuci v Manhattan & Bronx Surface Tr. Operating Auth. , 88 NY2d 923, 924), we must accept the following: First, defendant drove onto a sheet of ice 175 to 200 feet long. Second, the character of the ice was such that, despite his efforts to stop the car, he slid the entire 175 to 200 foot distance — a journey approximately two-thirds the length of a football field. Third, defendant was unable to see the sheet of ice until he was upon it. Fourth, defendant was driving only 20 miles per hour when he encountered the ice. Fifth, although the weather was bad (rain, snow, sleet and freezing temperatures), neither plaintiff nor defendant had encountered ice in the vicinity. In my view, this raises a question of fact as to whether defendant was confronted with an emergency.
It is settled law that an emergency doctrine charge must be given if, under some reasonable view of the evidence, the party requesting it was confronted with a “qualifying emergency” at the time of the alleged tortious conduct (Rivera v New York City Tr. Auth., 77 NY2d 322, 327). A “qualifying emergency” is a “sudden and unforeseen occurrence not of the actor’s own making” (Rivera, supra, 77 NY2d, at 327 [citing Ferrer v Harris, 55 NY2d 285]). Given these facts, the jury could reasonably have concluded — as they obviously did — that encountering this enormous sheet of ice was “a sudden and unforeseen occurrence.” Over the course of a lifetime, few winter drivers will ever encounter an ice hazard of that magnitude — let alone whén the roads are otherwise free of ice. Accordingly, the trial court properly gave the charge. In doing so, it did not conclude that an emergency existed. It merely ruled that, on the evi *177 dence presented, the existence of an emergency was debatable and allowed the jury to resolve the point.[1]
Charging the emergency doctrine simply reminds the jury that it must consider the reasonableness of a party’s actions in light of the existing circumstances (see, Ferrer v Harris, supra, 55 NY2d 285, 292, citing Wagner v International Ry. Co., 232 NY 176, 182 [Cardozo, J.]).[2] As we noted in Rivera, giving the emergency doctrine instruction is “by no means” a directed verdict for the party requesting it (Rivera, supra, at 328) or even a declaration that there was an emergency. Rather, the jury still has the final say as to whether there actually was an emergency and, if so, whether the party reacted to it reasonably (cf. Rodriguez v New York State Thruway Auth., 82 AD2d 853, 854 [party’s actions still unreasonable even though he was confronted with an emergency]).
In Ferrer v Harris (supra, 55 NY2d 285, 290-291), defendant was driving his car 20 miles per hour on a block filled with children. Plaintiff, a young girl, darted into the street and was *178 struck by defendant’s car. Defendant testified that he saw children playing on the sidewalk before the accident. He even admitted seeing plaintiff step between two parked cars seconds before she darted (Ferrer v Harris, supra, 55 NY2d, at 290-291). The trial court refused the emergency doctrine charge. We held that the trial court’s failure to charge it was reversible error because “it [was] more than conceivable that a jury could conclude that this defendant was faced with an emergency” (see, Ferrer v Harris, supra, at 292).
More recently, in Rivera, we again reversed for failure to give the emergency doctrine charge. We concluded that “the jury * * * could reasonably have concluded” that the accident was sudden and unexpected (see, Rivera, supra, 77 NY2d, at 327). Indeed, we have consistently authorized if not required the charge so as to allow the jury to resolve whether an emergency occurred and whether the party’s actions were reasonable in the face of it (see, Kuci v Manhattan & Bronx Surface Tr. Operating Auth., supra, 88 NY2d 923, 924 [trial court committed reversible error by failing to charge emergency doctrine because driver testified that he “did not anticipate being suddenly cut off by this particular car”]; Mas v Two Bridges Assocs., 75 NY2d 680, 686 [upholding trial court’s emergency doctrine charge because “we think that on the evidence in this case the emergency was not dissipated * * * as a matter of law, and that the question was properly submitted to the jury”]; Amaro v City of New York, 40 NY2d 30, 37 [emergency charge was properly given]).
I recognize that retention of the emergency doctrine has been under discussion nationally and that some jurisdictions have altered or abolished it.[3] The doctrine, however, is still a part of New York law. That being so, I submit that the trial court and the Appellate Division correctly applied it.
The trial court and the Appellate Division majority concluded that the matter was at least arguable, which is to say that there was “some reasonable view of the evidence” that defendant was confronted with an emergency. The jury went even beyond that; as fact finders they concluded that defendant was indeed confronted with an emergency and his actions were reasonable in light of it. Their verdict does not strike me as irrational. Accordingly, I would affirm the order of the Appellate Division.
*179 Chief Judge Kaye and Judges Levine, Ciparick and Wesley concur with Judge Graffeo; Judge Rosenblatt dissents and votes to affirm in a separate opinion in which Judge Smith concurs.
Order reversed, etc.

. Courts in other jurisdictions have held that the emergency charge should have been given in factually similar circumstances (see, Trujillo v Baldonado, 95 NM 321, 322-323, 621 P2d 1133, 1134-1135 [1980] [although defendant may have anticipated isolated patches of ice, question of fact existed as to whether defendant anticipated the “sheet of ice” upon which she lost control and collided with plaintiffs car]; Ballard v Rickabaugh Orchards, 259 Ore 200, 204, 485 P2d 1080, 1082 [1971] [on a cold stormy morning, plaintiff was driving 25 miles per hour over icy road and lost control when she tried to avoid a stopped truck]; Tennyson v Bandle, 181 NW2d 687, 690-691 [ND 1970] [defendant’s car hit a slippery patch of ice on a decline as he approached a stop sign going 15 miles per hour and defendant had not previously encountered ice]; Francis v Beiber, 10 Ohio St 2d 65, 69, 225 NE2d 251, 254-255 [1967] [upon coming over a crest in the road that was “icy and snowy,” defendant lost control of her car and it struck nearby parked cars]; Poe v Pittman, 150 W Va 179, 182-183, 144 SE2d 671, 674-675 [1965] [plaintiff’s truck was descending along a snow and ice-covered road and lost control]; Keiffer v Strbac, 349 P2d 6, 7 [Okla 1960] [on a snowy and freezing afternoon, defendant’s car hit an ice patch on a highway, skidded out of control and overturned]; Ormsby v Frankel, 54 Conn App 98, 100, 734 A2d 575, 579 [1999] [without warning, defendant’s car hit a 250-foot ice patch on a highway]; Davis v Najm, 120 Ohio App 421, 425, 203 NE2d 252, 256 [1963] [defendant was driving car at night on “icy, snowy, slippery highway” and was confronted by a car driving at him head on]; but see, Moore v Spangler, 401 Mich 360, 383, 258 NW2d 34, 44 [1977] [emergency instruction was improper because “even if we were to accept defendant’s testimony that the pavement was in fact icy, such a condition would not be ‘unusual’ for a January day in Michigan”]).

. See also, Prosser and Keeton, Torts § 33, at 197 (5th ed); 3 Harper, James and Gray, Torts § 16.11, at 487-488 (2d ed); PJI 2:14 (3d ed); 5A Warren’s New York Negligence, Liability for Negligence in Operation of Automobile § 8.01 (10), at 196-206.

. See generally, 1 Dobbs, Torts § 132, at 307-308; Prosser and Keeton, supra, at 197; Note, Wiles v Webb: The Abrupt End of the Sudden Emergency Doctrine in Arkansas, 51 Ark L Rev 833 (1998).