■ Neil W. Cahoon, Appellant, et al., Plaintiff, v Blake Frechette, as Administrator of the Estate of Stacey L. Frechette, Deceased, Respondent. (Action No. 1.) Blake Frechette, Individually and as Administrator of the Estate of Stacey L. Frechette, Deceased, Respondent, v Neil W. Cahoon, Appellant, et al., Defendant. (Action No. 2.) [927 NYS2d 689]—

McCarthy, J.

This action arises out of a February 2007 two-vehicle accident that occurred on State Route 9 in the Town of Beekmantown, Clinton County. Stacey L. Frechette (hereinafter decedent) lost control of the car she was driving and crossed into the lane of oncoming traffic where her car struck a pickup truck driven by Neil W. Cahoon and owned by his wife, who was also his pas-

senger. Thereafter, Cahoon and his wife commenced action No. 1 against Blake Frechette (hereinafter Frechette) as administrator of decedent's estate. Frechette answered and asserted a counterclaim seeking contribution or indemnification from Cahoon and, later, commenced action No. 2 asserting wrongful death and negligence causes of action against Cahoon and his wife. Cahoon then moved for summary judgment dismissing Frechette's counterclaim in action No. 1 and the complaint in action No. 2. Supreme Court denied the motion. Cahoon now appeals.

Because the record raises triable, material questions of fact regarding the application of the emergency doctrine to the accident at issue, we affirm. The emergency doctrine relieves a driver from liability if he or she was faced with an emergency situation not of his or her own making and responded in a manner that was "reasonable and prudent in the emergency context" (*Rivera v New York City Tr. Auth.*, 77 NY2d 322, 327 [1991]; *accord Caristo v Sanzone*, 96 NY2d 172, 174 [2001]; *Cancellaro v Shults*, 68 AD3d 1234, 1236 [2009], *lv denied* 14 NY3d 706 [2010]). "Whether a driver's actions in an emergency situation were reasonable is ordinarily a question of fact" (*Cancellaro v Shults*, 68 AD3d at 1236). To be granted summary judgment based on the emergency doctrine, a driver must establish as a matter of law that he or she did not contribute to the creation of the emergency situation, and that his or her reaction was reasonable under the circumstances such that he or she could not have done anything to avoid the collision (*see Quinones v Community Action Commn. to Help the Economy, Inc.*, 46 AD3d 1326, 1326 [2007]). Viewing the evidence in the light most favorable to Frechette and giving him the benefit of every favorable inference (*see Karl v Terbush*, 63 AD3d 1359, 1360 [2009]), Supreme Court properly denied Cahoon's motion for summary judgment due to the existence of triable factual issues.

The road conditions and Cahoon's speed under these wintery conditions are relevant to whether he may have contributed to the emergency situation and whether his response was reasonable. At his deposition, Cahoon testified that, on the morning of the accident, the wind was blowing snow around and causing drifts in the road, in some spots the drifting snow was only in one lane but in other spots it was across both lanes, when he saw the first drift he slowed down, and the highest speed he reached that day "was a little over 40" miles per hour. He testified that at the crest of the hill when he first saw decedent's vehicle, he was traveling at 40 miles per hour. Cahoon's wife testi-

fied that they were traveling at a slow rate of speed because there were "a lot of snow drifts" on the roadway. When asked why he was driving approximately 40 miles per hour when the posted speed was 55 miles per hour, Cahoon responded, "Because of typical winter driving" and "the road conditions," meaning the drifting snow. Contrary to his testimony, however, his vehicle's sensing and diagnostics module (hereinafter SDM) disclosed that, five seconds prior to the collision, Cahoon's vehicle was traveling at the speed of 52 miles per hour.[1] This evidence created an inference favorable to Frechette and raised a factual question as to whether Cahoon was driving too fast for the weather conditions, especially considering his own opinion that driving slowly was required due to the road conditions.[2]

The record also raises questions about the reasonableness of Cahoon's response to the emergency situation that confronted him when decedent's vehicle crossed into his lane. Cahoon asserts that he had only three seconds to respond, which was an insufficient time to react. While three seconds may not be a sufficient time to take evasive action (see Lucksinger v M.T. Unloading Servs., 280 AD2d 741, 742 [2001]), Cahoon was left with a short time period partially due to his rate of speed. The SDM data shows that Cahoon was traveling 52 miles per hour and slowed to 50 miles per hour one second prior to the collision. Had he been driving 40 miles per hour as he testified, he would have had more time to stop or slow his vehicle after observing decedent's vehicle and the collision would not have been as violent. If a jury determines that Cahoon's speed was unreasonable under the existing weather and road conditions, the jury could also conclude that Cahoon's own unreasonable speed was what deprived him of sufficient time to avoid the collision, thereby preventing him from escaping liability under the emergency doctrine (compare Burnell v Huneau, 1 AD3d 758, 761 [2003]).

---

1. No party has challenged either the reliability of the SDM or the accuracy of the data obtained from it.

2. While the dissent correctly notes that Cahoon was traveling below the posted speed limit, weather and road conditions can necessitate a much slower rate of travel. The dissent states that there is no evidence that either 40 miles per hour or 52 miles per hour was unsafe for the conditions on the date of the accident. We do not dispute the lack of evidence that 40 miles per hour would have been an unsafe speed. Contrary to his testimony, however, Cahoon was not traveling at that speed. Yet Cahoon and his wife testified that a speed of approximately 40 miles per hour was appropriate due to the conditions. Thus, their own testimony—when viewing the evidence in a light most favorable to Frechette—constitutes evidence that 52 miles per hour was possibly an unsafe speed for them to be traveling that day, creating a triable, material issue of fact.

Aside from the speed of Cahoon's vehicle, there is also a question regarding the distance Cahoon had to stop or slow his vehicle. He testified that he first saw decedent's vehicle when it was only 100 feet away from him. The police accident report lists 180 feet as the measurement from the crest of the hill to the spot where the accident occurred. Considering that Cahoon's and decedent's vehicles were traveling toward each other, decedent's vehicle must have been farther than 180 feet from the crest of the hill when Cahoon first saw her. The distance between the two vehicles when Cahoon first saw decedent's vehicle—and thus when he first saw her vehicle fishtailing—is unclear. This factual issue is relevant to the reasonableness of Cahoon's reaction and whether he had sufficient time and distance to avoid the collision (*see Quiles v Greene*, 291 AD2d 345, 346 [2002]).

When asked what evasive action he took to avoid an accident, Cahoon testified that he slowed his vehicle and "could have" turned his vehicle to the right. Upon further questioning, he stated that he "might have pulled to the right a little bit," although he had no specific recollection of doing so. He also testified that he applied his brakes "[v]ery softly." The SDM data revealed that the brake switch on Cahoon's vehicle did not activate until two seconds before the collision. Frechette's expert stated that although the brake switch was activated, the "vehicle was not slowing, indicating no substantial brake application by Cahoon."[3]

The police accident report concluded that Cahoon "attempted to avoid the impact by steering to the right and braking prior to impact," and that decedent's speed was the primary cause of the accident. These conclusions, however, were based on incomplete or questionable information. Cahoon's vehicle came to rest off the right shoulder of the road—facing slightly to the left—but it was forced in that direction by the collision. Perhaps due to snow on the roadway, there were no gouges, skid marks or other indications that the police could use to independently determine the speed of either vehicle. Cahoon and his wife gave statements to the police, but Cahoon inaccurately reported his speed as 40 miles per hour. It is unclear how the police concluded that Cahoon steered to the right. Cahoon himself was

---

3. Contrary to the dissent's suggestion, we are not speculating as to what Cahoon could have done to avoid the accident. Part of his testimony indicated that he himself was unsure of how he reacted. On this motion for summary judgment, we are merely noting that factual questions exist as to how Cahoon reacted when faced with an emergency situation and whether that reaction was reasonable—a question of fact traditionally decided by a jury (*see Cancellaro v Shults*, 68 AD3d at 1236).

unsure and only speculated that he "could have" or "might have" done so. Thus, we cannot rely on the conclusions in the police accident report when considering this motion for summary judgment.

Because there are questions of fact regarding whether Cahoon was traveling at a speed that was unsafe due to the weather and road conditions, whether his speed contributed to the creation of the emergency situation and whether his response was "reasonable and prudent in the emergency context" (*Rivera v New York City Tr. Auth.*, 77 NY2d at 327), Supreme Court properly denied Cahoon's motion for summary judgment (*see Quinones v Community Action Commn. to Help the Economy, Inc.*, 46 AD3d at 1326-1327; *Dumas v Shafer*, 4 AD3d 720, 722 [2004]; *see also Rhodes v United Parcel Serv.*, 33 AD3d 455 [2006]). A jury should resolve these factual issues to determine whether the emergency doctrine absolves Cahoon of liability for the collision.

Peters, J.P. and Malone Jr., J., concur.

Spain, J. (dissenting). By failing to distinguish between a triable, material question of fact and immaterial factual discrepancies, the majority today potentially imposes liability on the operator of a motor vehicle who clearly did not cause or contribute to this terrible accident. Accordingly, we dissent.

The factual scenario presented, that of a cross-over collision, is a classic emergency situation to which the emergency doctrine has been consistently applied (*see e.g. Ferebee v Amaya*, 83 AD3d 997, 997 [2011]; *Cancellaro v Shults*, 68 AD3d 1234, 1236 [2009], *lv denied* 14 NY3d 706 [2010]; *Mandel v Benn*, 67 AD3d 746, 747 [2009]; *Palma v Garcia*, 52 AD3d 795, 796 [2008]; *Burnell v Huneau*, 1 AD3d 758, 760 [2003]). It is undisputed that Neil W. Cahoon's pickup truck did not slip on winter road conditions nor did he lose control of the vehicle. It is also undisputed that he was driving under the posted speed limit and that, at most, three seconds elapsed from the time that Cahoon first crested the hill, and that he had less than two seconds to react from the point when decedent's vehicle swerved into his lane. It is settled law that a driver is not required to anticipate that an oncoming car will cross into his or her lane (*see Cancellaro v Shults*, 68 AD3d at 1237; *Burnell v Huneau*, 1 AD3d at 760; *Lamey v County of Cortland*, 285 AD2d 885, 886 [2001]; *Hanover Ins. Co. v Washburn*, 219 AD2d 773, 774 [1995]), and that "[s]uch short periods of time are insufficient for a [driver] to take any significant evasive action" (*Lucksinger v M.T. Unloading Servs.*, 280 AD2d 741, 742 [2001]). Hence, Cahoon should have been awarded summary judgment (*see Davis v Pimm*, 228 AD2d 885, 886 [1996], *lv denied* 88 NY2d 815 [1996]).

Nevertheless, the majority focuses on discrepancies between Cahoon's memory of certain details of the accident and data recorded by his truck's "black box" in reaching to find an issue of fact to defeat the motion for summary judgment. Regardless of whether Cahoon was traveling at the speed he estimated, 40 miles per hour, or that recorded by the black box at 52 miles per hour, he was traveling below the posted speed limit. Contrary to the majority's speculations, there is no evidence that either speed was unsafe for the conditions that day. Cahoon and his wife admitted that, before they came on the scene, there was some snow blowing onto the road, but mostly in the opposite lane. There is no evidence that Cahoon hit drifting snow or that other vehicles traveling within the speed limit in the same direction as Cahoon that morning were struggling with poor road conditions. That Cahoon may have been able to stop had he been going slower when decedent's vehicle suddenly veered into his lane is not enough to create an issue of fact that could impose liability. Indeed, any automobile accident might be prevented if someone had been going slower; the pertinent question is whether the allegedly negligent driver is traveling at an unsafe speed and, here, there is simply no evidence to support the conclusion that Cahoon was operating his vehicle at an unreasonable speed.

The tragic outcome of this accident should not impact our analysis; suggestions that Cahoon could have done something differently to avoid the accident—i.e., stopping immediately upon sighting the other car fishtailing, braking harder or swerving earlier—are precisely the types of anticipation not required of a driver, and rely on speculation we should not engage in when assessing the reasonableness of a driver's split second reaction to an emergency (*see Cancellaro v Shults*, 68 AD3d at 1237; *Dearden v Tompkins County*, 6 AD3d 783, 784 [2004]; *Burnell v Huneau*, 1 AD3d at 761; *Lamey v County of Cortland*, 285 AD2d at 886). We would reverse, and grant summary judgment dismissing the counterclaim against Cahoon in action No. 1 and the complaint against him in action No. 2.

Lahtinen, J., concurs. Ordered that the order is affirmed, with one bill of costs.