■ Richard John Powers et al., Appellants, v Kyong Kwan Min et al., Defendants, and New York City Transit Authority et al., Respondents. (And a Third-Party Action.) [46 NYS3d 90]—

Order, Supreme Court, Bronx County (Barry Salman, J.), entered on or about September 21, 2015, which, among other things, granted defendants-respondents' (collectively, Transit defendants) motion for summary judgment dismissing the

complaint as against them, unanimously reversed, on the law, without costs, and the motion denied. Appeal from order, same court and Justice, entered on or about January 19, 2016, which denied plaintiff's motion to reargue, improperly denominated a motion to renew and reargue, unanimously dismissed, without costs, as taken from a nonappealable order.

On March 17, 2010, at approximately 8:26 a.m., the decedent, Meg Felice Charlop, was riding her bicycle southbound up a hill on Crotona Avenue in the Bronx. She stopped for the red light, and after she passed the intersection with East Tremont Road, defendant Kyong Kwan Min opened the driver's side door of his parked vehicle into traffic and a portion of the decedent's bicycle hit the door. She apparently tried to catch her balance, but instead fell over on to the ground and was run over by a bus. The motion court found that the occurrence took place instantaneously and that defendant bus driver did not cause this sudden unforeseen occurrence; nor did he have sufficient time to avoid the resulting accident, citing our decision in *Cropper v Stewart* (117 AD3d 417 [1st Dept 2014], *lv denied* 24 NY3d 914 [2015]).

However, as this Court recently held in *Maisonet v Roman* (139 AD3d 121, 122 [1st Dept 2016], *appeal dismissed* 27 NY3d 1062 [2016]), the emergency doctrine is "usually not a viable defense unless the driver of the offending vehicle is faced with a sudden and unexpected circumstance that is not of his or her own making." As we noted there, "The emergency doctrine recognizes that 'when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context,' provided the actor had not created the emergency" (*id.* at 123, quoting *Rivera v New York City Tr. Auth.*, 77 NY2d 322, 327 [1991]). "Accordingly, except in the most egregious circumstances, an evaluation of the reasonableness of a defendant driver's reaction to an emergency is normally left to the trier of fact" (*Maisonet* at 125; *see also Green v Metropolitan Transp. Auth. Bus Co.*, 26 NY3d 1061, 1062 [2015]).

Here, there are different versions of the facts as reported and testified to by defendant driver, as well as by an independent eyewitness.

On the day of the accident, a statement was taken by the Transit investigator from defendant Wayne W. Forde, the driver

of the bus, who stated that he saw Ms. Charlop riding a bicycle to the right of his bus, and then saw the door of Mr. Min's car open. Ms. Charlop hit the door and was thrown in front of the bus. He says he tried to swerve to the left to avoid hitting Ms. Charlop but she was already under the bus, and he then stopped.

Four years later at his deposition, he testified that he saw the bicyclist three to five stops before the accident, and that they made "visual contact" as they passed each other a few times. He testified that his standard protocol was to always leave a safety cushion between him and the cars to his right, so that if a car door opened, at least there would be a four-foot cushion between him and the car. Forde further testified that there was no time when there was a blind spot where he couldn't see the bicyclist, through use of his driver's door mirror, the exterior mirror and the front right side windshield, so he had a complete view of the whole right side of the bus. However, he also testified that he had no recollection of applying the brakes nor turning the bus to the left; the only thing he could recall was actually feeling when the bus went over Ms. Charlop. He also testified at his deposition that on the day of the accident he had a full load of passengers but could not remember if anyone was standing in front of the white line, which would have been a violation of City, State and Federal regulations. There is no dispute that everything happened very quickly.

At the exact time of the accident, Justino Lopez, a retired Transit bus driver, who for years had operated the very same bus route as defendant driver, was driving his own vehicle northbound on Crotona Avenue. He was stopped at the light at the corner of Crotona and East Tremont Avenues, and was able to see, from his vantage point higher up on the hill, the bicyclist heading southbound going up the hill. There was nothing obstructing his view, and he noticed that there was a full load of people on the bus and that there were people standing in front of the white line.

He testified that when the bus is full to capacity, the driver should start off "real slow" because the bus has a lot of weight, and that having people in front of the white line would block his view as a bus operator on the whole right side so he did not think the driver could have seen the bicyclist on his right side.

He testified that shortly after the light turned green, Ms. Charlop hit Mr. Min's door and the bike went up; she was trying to catch her balance with her left leg, but she fell over, landed on her left shoulder and the bus just ran over her right there.

Lopez further testified that he got out of his car and went up to the bus driver to tell him there was a lady under his bus, because he did not believe the driver knew that he had hit someone; it appeared to him that the driver swerved to the left *after* he felt an impact, not before, in an attempt to try to avoid hitting Ms. Charlop, as Forde indicated in his initial statement.

Lopez also testified that when there was a bicyclist traveling in front of him he would hold back until he knew he was fully clear of her, and he would have scanned the parked cars carefully because he could clearly see that someone was in Min's car and knew that people often opened their doors into traffic without looking.

Given the conflicting testimony in the record, including that there may have been passengers standing in front of the white line, which partially blocked the bus driver's view as he passed the red light, it was error for the motion court to have determined the reasonableness of the bus driver's response to the emergency situation presented, as a matter of law. This is an issue of fact that should be decided by a jury.

As a result of our conclusion, we need not reach plaintiff's remaining issues on appeal. Concur—Acosta, J.P., Richter, Mazzarelli, Kapnick and Gesmer, JJ.