| Jones v City of New York |
|---|
| 2025 NY Slip Op 34753(U) |
| December 8, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 154355/2024 |
| Judge: Hasa A. Kingo |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**   **HON. HASA A. KINGO**

*Justice*

| | |
|---|---|
| | **PART**      **05M** |

-----------------------------------------------------------------------------X

DARYL JONES,

                           Plaintiff,

                      - v -

THE CITY OF NEW YORK, THE NEW YORK CITY
SANITATION DEPARTMENT, CHRISTINA PEDUTO,
KOSHAEV AZAMAT, BAKHODUR TADJIEV,

                         Defendant.

-----------------------------------------------------------------------------X

**INDEX NO.**     154355/2024

**MOTION DATE**     12/08/2025

**MOTION SEQ. NO.**     002

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47

were read on this motion for                 SUMMARY JUDGMENT        .

      Defendants Koshaev Azamat and Bakhodur Tadjiev (collectively, "Defendants") move for summary judgment pursuant to CPLR § 3212, seeking an order dismissing the complaint and all cross-claims against them in this action. Defendants contend that they bear no liability for the subject motor vehicle accident, having been free of negligence, and that the sole proximate cause of the collision was the conduct of their co-defendants, The City of New York, the New York City Department of Sanitation, and sanitation truck driver Christina Peduto (the "City Defendants"). The City Defendants oppose the motion, while plaintiff Daryl Jones takes no position on the motion. Defendants' motion on the issue of liability is timely, as no note of issue has been filed.

### BACKGROUND AND PROCEDURAL HISTORY

      This action arises from a multi-vehicle collision that occurred on October 3, 2023, at approximately 12:57 P.M., near the intersection of Lexington Avenue and East 103rd Street in Manhattan. At that time, Defendant Tadjiev was driving a vehicle owned by Defendant Azamat southbound on Lexington Avenue, proceeding lawfully through a green light up a one-way hill. Suddenly and without warning, a New York City Department of Sanitation street sweeper truck, driven by co-defendant Peduto, began barreling down the hill in reverse against traffic. The sanitation vehicle careened backwards into multiple vehicles: it first struck the rear of a white van traveling just ahead of Defendants' car, then continued downhill and collided head-on with Defendants' stopped vehicle. The force of the impact propelled Defendants' vehicle down the hill and to the side of the street, where it ultimately struck the plaintiff's vehicle (designated as Vehicle #4 in the police report). Defendant Tadjiev was rendered unconscious by the crash and was transported to a hospital.

[* 1]

Plaintiff Daryl Jones commenced this personal injury action on or about May 9, 2024, alleging negligence against the City of New York, the Department of Sanitation, Ms. Peduto (the sanitation truck driver), and against Mr. Azamat and Mr. Tadjiev as owner and operator of the car that struck plaintiff's vehicle. Defendants Azamat and Tadjiev joined issue by serving an answer on July 12, 2024. It appears that multiple related actions arising from this incident (involving other injured parties) have been consolidated with the instant case for joint discovery by court order. Indeed, in one such related case, a Supreme Court Justice has already granted summary judgment on liability against the City, noting that the City "concede[d] that the [sanitation truck] driver failed to operate the sanitation vehicle with reasonable care" and that the City offered no non-negligent explanation for the runaway truck. Settlement conferences have been held, but as of this motion no depositions have taken place and no Note of Issue has been filed.

Defendants Azamat and Tadjiev now move for summary judgment dismissing all claims and cross-claims, contending that the undisputed evidence – particularly a dashcam video recording of the accident – establishes that they were not at fault for the happening of the accident. The City Defendants oppose the motion, arguing that a jury should determine whether Mr. Tadjiev was negligent in failing to avoid the collision. Defendants submitted reply papers responding to the City's arguments.[1]

## ARGUMENTS

Defendants Azamat and Tadjiev assert that they are innocent victims of an unforeseeable incident caused entirely by the City's runaway vehicle. In support of their motion, they submit Mr. Tadjiev's sworn affidavit and the dashboard camera video from his vehicle, which together provide an objective, moment-by-moment account of the crash. According to Defendants, the dashcam footage "portrays the incident clearly and objectively" and eliminates any question of fact regarding their lack of culpability. The video shows Defendant Tadjiev driving prudently with the right-of-way, proceeding uphill on Lexington Avenue, when the City's street sweeper suddenly comes hurtling down in reverse and strikes first a van and then Defendants' car. Defendant Tadjiev affirms that he brought his vehicle to a stop as soon as he perceived the imminent collision, but the out-of-control sanitation truck nevertheless plowed into him. Given these facts, Defendants argue that they were "not at fault in the happening of the accident", and that the City's vehicle was the sole proximate cause of the collision, with "no negligence" attributable to Defendants. They contend that, as a matter of law, a driver in Mr. Tadjiev's position cannot be held liable when a third-party vehicle unexpectedly careens into his path. Defendants cite multiple on-point appellate cases in which summary judgment was granted to a driver who was struck by another vehicle's sudden, unlawful maneuver. For example, in *Aponte v. Uber Techs., Inc.*, 230 AD3d 1053 (1st Dept 2024), a dashcam video conclusively established that a nonparty driver's illegal left turn was the only cause of the accident, and the court found no fault on the part of the defendant driver who was struck.

Similarly, in *Calderon v. Calise*, 214 AD3d 446 (1st Dept 2023), video evidence demonstrated that one driver's actions were the sole proximate cause of a multi-vehicle collision,

---

[1] The court notes as a preliminary matter that the City's opposition was served after the deadline set by CPLR § 2214(b). In the interest of justice and given the absence of prejudice, however, the court has considered the City's untimely opposition rather than disregarding it.

**154355/2024  JONES, DARYL vs. THE CITY OF NEW YORK ET AL**                                    **Page 2 of 12**
**Motion No.  002**

showing "no negligence" by the defendant who was hit. Defendants argue the same is true here: the sanitation truck's egregious malfunction or operator error was wholly responsible for this crash, and Mr. Tadjiev — who had been driving normally and obeying all traffic laws — did nothing to contribute to the accident.

Defendants further invoke the emergency doctrine. They maintain that Mr. Tadjiev was confronted with a sudden emergency not of his own making when the City's large street sweeper came rushing toward him "suddenly without any warning." By all accounts, he had only a split-second to react and "virtually no opportunity to avoid a collision". Under such circumstances, Defendants contend, the law does not demand perfection or second-guess a driver's instantaneous reaction. Defendant Tadjiev's response — braking his vehicle to a stop — was, in their view, a reasonable and blameless reaction to an unforeseen hazard. Any suggestion that he might have avoided the impact by swerving or taking some other maneuver, they argue, is pure hindsight speculation and legally insufficient to create a triable issue. Defendants point out that they had no duty to anticipate that a municipal vehicle would suddenly come barreling the wrong way down a one-way street. It is undisputed that the sanitation truck's brakes failed (according to the City's own records) and that it rolled downhill out of control. Defendants assert they cannot be charged with foreseeing or preventing another vehicle's mechanical failure or gross negligence. In support, they cite cases such as *Kirby v. Lett*, 208 AD3d 1174 (2d Dept 2022) and *Wade v. Knight Transp., Inc.*, 151 AD3d 1107 (2d Dept 2017), which hold that a driver is not required to anticipate extraordinary scenarios like a vehicle suddenly crossing into oncoming traffic or losing control.

Finally, Defendants note that the City itself has effectively acknowledged its sole responsibility for this accident in related litigation. They reference a companion case arising from the same incident in which the City Defendant purportedly conceded that its street sweeper driver failed to operate the vehicle with due care, resulting in an order granting summary judgment against the City on liability. Given all the above, Defendants Azamat and Tadjiev argue that no reasonable fact-finder could assign them any fault for this accident. They seek dismissal of the complaint and all cross-claims, thereby excusing them entirely from the case.

The City of New York and its co-defendants oppose the motion, arguing that material questions of fact exist as to whether Mr. Tadjiev was truly blameless or whether he failed to act reasonably to avoid the collision. The City does not dispute the basic sequence of events shown on the dashcam video – namely, that the sanitation street sweeper rolled downhill in reverse and struck multiple vehicles. However, the City focuses on the actions (or inaction) of Mr. Tadjiev in the moments before impact. They contend that the dashcam footage reveals a potential lapse by Mr. Tadjiev that a jury must evaluate. In particular, the City notes that a white van traveling directly in front of Defendants' car managed to perceive the danger and swerve to the side out of the street sweeper's path. As the sweeper came hurtling down Lexington Avenue, the van is seen pulling toward the left curb to escape being hit. By contrast, Mr. Tadjiev's vehicle continued moving straight and came to a stop in the middle of the lane, where it was struck head-on. The City argues that while the van's driver took evasive action, Mr. Tadjiev "took no action" to get out of the way, despite having had a brief window of opportunity while he was still in the intersection of E. 103rd Street. According to the City, Mr. Tadjiev could have turned his vehicle either left or right at that intersection to clear Lexington Avenue and potentially avoid the collision. In the City's view, the fact that "another driver was able to observe the conditions and react" (i.e., the white van)

[* 3]

demonstrates that avoidance was at least possible under the circumstances. They insist this is "not mere hypothetical" conjecture, but evidence that a prudent driver in Mr. Tadjiev's position might have evaded the oncoming truck. Thus, the reasonableness of Mr. Tadjiev's response to the emergency is said to be a classic factual question for the jury, not resolvable as a matter of law.

The City cites *Caparitia v. Johnson*, 216 AD3d 529 (1st Dept 2023), in support of its argument. In *Caparitia*, a plaintiff driver sought summary judgment after a truck ahead of her made a sudden improper turn, but the Appellate Division, First Department, found an issue of fact as to whether the plaintiff had more than a few seconds to react and could have avoided the crash. By analogy, the City contends that the dashcam video here could lead a jury to conclude that Mr. Tadjiev had enough time to attempt an evasive maneuver, rather than merely stopping in the truck's path. The City emphasizes that the video begins when Defendants' car was about a block away from the eventual collision point, and the street sweeper is visible up the hill at least 14 seconds before impact, initially stationary at the top of Lexington Avenue. As Defendants' car approached the 103rd Street intersection, the sweeper began rolling backward and the white van reacted, yet Mr. Tadjiev continued through the intersection and did not turn off or pull aside. From these facts, the City argues that a juror could find Mr. Tadjiev was negligent in failing to take reasonable precautions when confronted with the runaway vehicle. The reasonableness of his conduct in that emergency—whether he truly had "only seconds" or perhaps a bit more time to respond—is, according to the City, debatable in a manner that precludes summary judgment.

In addition, the City contends that Defendants' motion is premature. No depositions of the drivers (neither Mr. Tadjiev nor Ms. Peduto) have yet been conducted. The City asserts that it should be permitted to explore the details of Mr. Tadjiev's observations and decision-making through testimony before the court conclusively determines liability. They urge that further discovery might shed light on whether Mr. Tadjiev saw or heard the truck earlier than he claims, whether evasive action was feasible, and other facts bearing on comparative fault. The City notes that summary judgment is a drastic remedy, especially in negligence cases, and it invokes the principle that questions of proximate cause and the reasonableness of a driver's response are typically matters for the fact-finder. The City's opposition quotes at length from *Gerard v. Inglese*, 11 AD2d 381 (2d Dept 1960), an older appellate decision cautioning that even where the basic physical facts of an accident are undisputed, the issue of whether a defendant acted as a reasonably prudent person in an emergency is "essentially one of fact" that ordinarily must be left to the jury. In sum, the City Defendants maintain that this case is not so clear-cut that liability can be decided as a matter of law. They ask the court to deny summary judgment so that a jury can ultimately determine whether any failure by Mr. Tadjiev to avoid the crash contributed to the accident.

In reply, Defendants Azamat and Tadjiev vigorously refute the City's contentions and underscore the absence of any concrete evidence contradicting their account. As a threshold matter, Defendants point out that the City's opposition is supported only by an attorney's affirmation, not by any affidavit from a witness with personal knowledge of the accident. The sanitation truck driver, Ms. Peduto, has offered no testimony or affidavit to suggest that Mr. Tadjiev had a realistic chance to avoid the collision. Nor has the City proffered an expert affidavit or other evidence to substantiate its theory of an avoidable accident. Defendants argue that an attorney's unsworn assertions and interpretations of the video cannot create a triable issue of fact. To defeat summary judgment, the City was required to produce evidentiary proof in admissible form, not mere

154355/2024   JONES, DARYL vs. THE CITY OF NEW YORK ET AL
Motion No.  002

Page 4 of 12

[* 4]

conjecture or speculation. Here, the City "submitted no evidence of a nonnegligent explanation for the accident," and its arguments about what Mr. Tadjiev might have done differently are purely speculative and "insufficient to raise an issue of fact." In support of this point, Defendants cite *McDaniel v. Codi Transp., Ltd.*, 149 AD3d 595 (1st Dept 2017), where the Appellate Division, First Department, held that speculative arguments about how a plaintiff driver could have avoided an accident, in the absence of any evidentiary showing, could not defeat summary judgment.

Defendants also directly address the white van scenario that the City emphasizes. They argue that the conduct of a third-party driver (the van) does not establish a legal standard of care for Mr. Tadjiev. In other words, just because the van's driver attempted an evasive maneuver does not mean Mr. Tadjiev was negligent for not attempting the exact same maneuver. No authority is cited by the City (because none exists) for the proposition that one driver's split-second reaction defines what a reasonably prudent driver must do in that moment. On the contrary, Defendants argue, the law recognizes that different individuals may react differently in an emergency, and a person who hesitates or chooses one form of evasive action over another is not necessarily negligent — especially when only seconds are available. Defendants reiterate that Mr. Tadjiev did react to the emergency by braking to a stop, which is an intuitively reasonable response when a vehicle is hurtling towards you head-on. They contend there is no evidence that turning left or right (as the City suggests) would have been safer or even feasible in the scant time available. Indeed, the van's successful swerve does not guarantee that Mr. Tadjiev's larger SUV could have cleared the sweeper's path in time, or that turning wouldn't have led to a different collision (for example, with cross-traffic or a parked car). All arguments that Defendants "could have moved their vehicle in one direction or another" to avoid being hit are, in Defendants' words, nothing but "pure speculation".

Defendants buttress this point with recent appellate authority squarely rejecting speculation about evasive measures in similar contexts. They highlight the Appellate Division, First Department's, statement in *Aponte v. Uber Techs.*, *supra*, that while under some limited circumstances a driver with sufficient time might have a duty to attempt an evasive action, "this duty does not arise when the driver only has a few seconds to react to another driver's violation of traffic laws" (230 AD3d at 1054).

Here, by the City's own timeline, Mr. Tadjiev had at most a handful of seconds from the moment the sweeper began rolling to the moment of impact. In such a rapid emergency, Defendants argue, no duty to execute an ideal evasive maneuver can be imposed on the driver. Defendants cite *Rooney v. Madison*, 134 AD3d 634, 634-635 (1st Dept 2015), for the proposition that "[s]peculation regarding evasive action that a defendant driver should have taken to avoid a collision, especially when the driver had, at most, a few seconds to react, does not raise a triable issue of fact." In *Rooney*, as in this case, the Appellate Division, First Department, refused to entertain conjecture that the defendant might have averted the crash, because the emergency unfolded too quickly to expect more of the driver. Defendants maintain that the City's position is exactly the sort of hindsight speculation that these cases forbid.

With respect to the emergency doctrine, Defendants note that the City's opposition conspicuously failed to rebut or even address their emergency-doctrine defense. By not countering this point, the City effectively concedes that Mr. Tadjiev was indeed faced with a sudden

emergency beyond his control. Defendants reiterate that, under long-established law, when a driver "is confronted with an emergency not of [his] own making" and has only seconds to react, he cannot be held negligent if his response is reasonable under the circumstances. They argue that nothing about Mr. Tadjiev's conduct was unreasonable in the context of the emergency that confronted him; he was a cautious driver caught in a nightmare scenario. Defendants also clarify that the cases cited by the City are distinguishable on their facts. *Caparitia*, *supra*, for instance, involved a different scenario (a truck making a turn across the plaintiff's lane) and the appellate court found evidence that the plaintiff might have had more time to react than she claimed. Here, in contrast, we have a vehicle mechanically careening the wrong way down a hill, which is far more abrupt and uncontrollable than a truck executing a turn. Defendants also distinguish *Zeman v. Dewes*, 35 AD2d 940 (1st Dept 1970), which the City cited. In *Zeman*, the defendant driver's own vehicle malfunctioned (going forward when he meant to reverse) and the driver might have mishandled his pedals, raising a factual question about whether his response was reasonable. By comparison, Mr. Tadjiev's vehicle did not malfunction at all; he was simply struck by another malfunctioning vehicle. Thus, Defendants contend, *Zeman* is inapposite: there is no question here of Mr. Tadjiev's own equipment or actions precipitating the event. Lastly, Defendants address *Gerard v. Inglese*, *supra*, the 1960 case the City quoted. They point out that in Gerard the appellate court, despite musing about the general rule of jury determinations in negligence cases, actually affirmed summary judgment for the plaintiff because the facts of that case were "inescapable" and left no triable issue of the defendant's negligence. Defendants argue that the same is true here: the evidence of their lack of negligence is so clear that, just as in Gerard, summary judgment is warranted notwithstanding the general caution that many negligence cases go to the jury.

Finally, Defendants reject the City's plea for further discovery as a basis to delay judgment. They emphasize that the City has offered only the hope that depositions might turn up something – but "mere hope or speculation that evidence sufficient to defeat a motion for summary judgment may be uncovered during the discovery process is insufficient to deny the motion." Defendants cite *Yonghong Xia v Zhao Xian Zeng*, 219 AD3d 914 (2d Dept 2023) on this point, noting that the City has not identified any specific facts that are likely to emerge from depositions which would alter the analysis. Given the highly peculiar circumstances of the accident and the existence of an objective video, Defendants argue that additional testimony would be cumulative at best. In their view, the essential facts are already before the court, and those facts establish their entitlement to judgment as a matter of law. Defendants also note that even if issues of comparative fault exist between the City and some other party, that would not preclude granting summary judgment to Defendants. Relying on the Court of Appeals' decision in *Rodriguez v. City of New York*, 31 NY3d 312 (2018), they observe that a party can obtain summary judgment on liability without disproving all other potential contributing fault. In *Rodriguez*, the Court held that a plaintiff may be granted partial summary judgment on a defendant's liability despite open questions about the plaintiff's own comparative negligence. Here, by analogy, the mere fact that the City posits multiple causes of the accident does not bar this court from ruling as a matter of law that these Defendants were not one of those causes. Defendants reiterate that they have demonstrated 0% liability on their part; thus, any comparative fault issue is solely between the City and others, and does not involve Defendants. In sum, Defendants urge that the City's opposition has failed to raise a genuine issue of material fact, and they ask the court to grant the motion in its entirety.

## DISCUSSION

[* 6]

CPLR § 3212 provides that summary judgment shall be granted if the moving party establishes that there is no genuine issue of material fact to be tried and that it is entitled to judgment as a matter of law. The movant bears the initial burden of making a prima facie showing of entitlement to judgment by demonstrating the absence of any material factual issues. If that showing is made, the burden shifts to the opposing party to "produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial" (*Alvarez v. Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v. City of New York*, 49 NY2d 557, 562 [1980]). In evaluating a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. However, the opponent of summary judgment cannot rely on mere suspicions, conclusory allegations, or speculation in place of concrete evidence. As the Court of Appeals put it in *Zuckerman*, the non-movant must lay bare its proof and cannot defeat summary judgment with "mere speculation or conjecture as to what might be uncovered later." Thus, where the movant's evidence is sufficient to eliminate all triable issues, bald assertions or ipse dixit arguments by the opponent will not suffice to avoid summary judgment (*id.*; *see also Perez v. Brux Cab Corp.*, 251 AD2d 157 [1st Dept 1998][attorney's affirmation without personal knowledge or factual support is inadequate to raise an issue]).

Here, Defendants Azamat and Tadjiev have met their prima facie burden of demonstrating that they were not negligent and that no act or omission on their part caused or contributed to the accident. The evidence submitted on the motion includes a dashcam video of the collision and a sworn affidavit from the driver, Mr. Tadjiev, both of which are uncontradicted in the record. This evidence compellingly shows that Mr. Tadjiev was operating his vehicle in a lawful, cautious manner when an extraordinary hazard presented itself. The dashcam footage (the accuracy of which is not disputed) depicts Defendants' car proceeding with the right-of-way on Lexington Avenue moments before the crash. There is no indication that Mr. Tadjiev was speeding, distracted, or violating any traffic rules – in fact, the light was green in his direction and he was traveling below the speed limit up a hill. Then, in a shocking turn of events, the City's large street sweeper appears ahead, moving backwards down the hill against traffic at a high rate of speed. Mr. Tadjiev reacted by bringing his car to a stop as quickly as one could reasonably expect, but the runaway sweeper slammed into him head-on. There is no evidence that Mr. Tadjiev had any prior notice of the sweeper's approach in time to avoid being in its path; it quite literally came from the opposite direction of travel, a scenario virtually no driver would anticipate. The police accident report corroborates that the sanitation vehicle's brakes malfunctioned, causing it to roll uncontrollably. In short, Defendants' submissions establish a classic case of a blameless driver struck by another vehicle's unexpected loss of control.

Under New York law, a driver who is struck by a vehicle that crosses into his lane or otherwise violates the traffic laws generally will be found free of fault as a matter of law, provided the driver himself did nothing unreasonable to contribute to the happening of the accident. This principle has been applied in numerous similar cases. For example, in *Calderon v. Calise*, 214 AD3d 446 (1st Dept 2023), a video demonstrated that one vehicle's driver was solely responsible for a collision, "and [it] showed no negligence" on the part of the defendant driver who was impacted. The Appellate Division, First Department, affirmed summary judgment exonerating the defendant in that case. Likewise, in *Aponte v. Uber Technologies, Inc.*, 230 AD3d 1053 (1st Dept

154355/2024   JONES, DARYL vs. THE CITY OF NEW YORK ET AL
Motion No.  002

Page 7 of 12

7 of 12

2024), the Appellate Division, First Department, unanimously affirmed summary judgment for a defendant driver whose dashcam proved that a third-party's sudden illegal turn was the sole cause of the crash; the plaintiff's allegation that the defendant driver should have somehow avoided the collision was deemed entirely speculative.

The dashcam evidence at bar is every bit as conclusive. It objectively establishes that the City's street sweeper, due to either mechanical failure or operator negligence, careened backwards into Defendants' stopped car. There is not a shred of evidence that Mr. Tadjiev operated his vehicle improperly. To the contrary, the video shows he was in his proper lane, obeying traffic signals, and in the final seconds had halted his car in an attempt to avoid impact. There is no suggestion that anything Mr. Tadjiev did triggered or exacerbated the collision – he was simply there when the City's truck barreled into him. Thus, Defendants have affirmatively demonstrated that fault lies entirely with the co-defendants, not with Mr. Tadjiev or Mr. Azamat. This showing satisfies Defendants' prima facie burden on summary judgment.

The burden accordingly shifts to the City Defendants (as the opponents of the motion) to produce evidence of a material factual dispute. The City has failed to meet that burden. Crucially, the City has offered no contrary evidence to rebut the scenario depicted in the video or to suggest that Mr. Tadjiev was in any way negligent. The City did not submit any affidavit from Ms. Peduto (the sanitation truck driver) or from any eyewitness to the accident. There is no expert testimony opining that Mr. Tadjiev had time to take additional action. In fact, there is not even an affidavit from the white van's driver indicating what exactly transpired from that driver's perspective. The entirety of the City's opposition rests on an attorney's speculation that, because one vehicle (the van) managed to move slightly to the side, perhaps Mr. Tadjiev also should have been able to do so. But an attorney's hypothesis is not evidence. As the Appellate Division, First Department, has admonished, "speculation regarding evasive action that a defendant driver should have taken to avoid a collision, especially when the driver had, at most, a few seconds to react, does not raise a triable issue of fact" (*Rooney v. Madison*, 134 AD3d 634, 634-635 [1st Dept 2015], *lv denied* 27 NY3d 911 [2016]]). This principle directly applies here. The City's theory that Mr. Tadjiev "could have" turned left or right in the intersection is pure conjecture, unsupported by any concrete facts such as measurements, timing, or expert analysis. The dashcam video, if anything, undermines the notion that a safe evasive turn was feasible: Mr. Tadjiev had only an instant to decide, and his immediate reaction was to hit the brakes (an instinctively reasonable response). The video shows that the street sweeper was moving at a high speed and striking other vehicles along the way, giving Mr. Tadjiev precious little time or space to maneuver. By the time he even reached the intersection at 103rd Street, the sweeper was almost upon him. A split-second judgment not to swerve is hardly evidence of negligence; on the contrary, swerving might have placed him in the path of the very van that was also scrambling to escape, or into the path of pedestrians on the sidewalk. The City's hindsight assertion that Mr. Tadjiev "could have turned onto 103rd Street" or ducked behind a double-parked car is speculative on its face – it presumes facts not in evidence (e.g., that the cross street was clear, that Mr. Tadjiev had control and awareness to execute such a turn in a heartbeat, etc.).

New York courts consistently reject this sort of conjecture as insufficient to defeat summary judgment. In *McDaniel v. Codi Transp., Ltd*., 149 AD3d 595 (1st Dept 2017), for example, the Appellate Division, First Department, held that a defendant's arguments about how

**154355/2024   JONES, DARYL vs. THE CITY OF NEW YORK ET AL**
**Motion No.  002**

Page 8 of 12

the plaintiff driver *might* have avoided the accident were "speculative, and therefore insufficient to raise an issue of fact" in the absence of any evidentiary support. Similarly, in *Hidalgo v. Vasquez*, 187 AD3d 683 (1st Dept 2020)(cited in *Aponte*), the Appellate Division, First Department, found no triable issue where the only allegation of negligence was that a driver failed to somehow dodge an incoming collision – an allegation deemed too speculative to carry weight.

Here, the City's contentions boil down to the same impermissible hindsight second-guessing. The court cannot let this case proceed to a jury on the mere hope that jurors might engage in conjecture about alternative scenarios, when the actual evidence (the video) so clearly depicts an unavoidable crash. As our Court of Appeals has instructed, "[m]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" to raise a question of fact (*Zuckerman*, 49 NY2d at 562). The City's opposition, lacking any affidavit from a person with knowledge or any tangible contradictory proof, amounts to precisely the kind of unsubstantiated assertion that cannot overcome a prima facie case.

It bears emphasizing that the City's focus on what the white van's driver did does not create a triable issue regarding Mr. Tadjiev's conduct. One driver's ability to take a particular evasive action does not establish that another driver in a similar emergency must or could successfully do the same. Human reactions to emergencies are not uniform, and the law does not impose liability on a blameless driver merely because a bystander managed a heroic avoidance maneuver. The City cites no authority for using a third party's split-second reaction as the benchmark for negligence, and this court is aware of none. On the contrary, the cases hold that each driver's circumstances must be judged on their own facts, and speculation that "if Driver A could do it, Driver B should have too" is insufficient. Indeed, the white van's successful escape only underscores how extraordinary this situation was – the van driver was very fortunate to find an opening and avoid catastrophe. That fact does not convert Mr. Tadjiev's misfortune (being unable to get out of the way in time) into negligence. To rule otherwise would in effect punish a driver for not performing a near-miracle under deadly pressure. The law does not countenance such an approach. As the Appellate Division, First Department stated, in *Aponte*, even though "under some limited circumstances a party who has time to act may have a duty to take evasive actions," no such duty arises when events are unfolding in a matter of seconds (230 AD3d at 1054).

Here, the window between the onset of the emergency and the impact was so brief that Mr. Tadjiev cannot be faulted for failing to accomplish what the City, with 20/20 hindsight, imagines he might have done.

The emergency doctrine squarely applies to this case and further compels the conclusion that Mr. Tadjiev was not negligent. Under the emergency doctrine, "when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for deliberation, the actor may not be held negligent if the actions taken are reasonable and prudent in the emergency context" (*Rivera v. New York City Transit Authority*, 77 NY2d 322, 327 [1991]).

This doctrine recognizes that a person confronted with a sudden peril cannot be expected to exercise the cool judgment of someone with time to reflect, and it gives legal latitude to those who, through no fault of their own, must react in the moment to avoid harm. Both the existence of an emergency and the reasonableness of the response are typically fact-specific inquiries; however,

154355/2024   JONES, DARYL vs. THE CITY OF NEW YORK ET AL          Page 9 of 12
Motion No.  002

9 of 12

[* 9]

when the material facts are undisputed and only one conclusion can be drawn, the court may determine the issue as a matter of law (*Caristo v. Sanzone*, 96 NY2d 172, 174 [2001]; *Vitale v. Levine*, 44 AD3d 935, 936 [2d Dept 2007]).

In the case at bar, the evidence conclusively establishes a classic sudden emergency. It is hard to imagine a more unexpected roadway hazard than a 25-ton garbage sweeper flying backwards down a city street. Defendant Tadjiev was driving normally when, "suddenly and without warning," a large sanitation truck came at him in the wrong direction. He had virtually no time to react – the video suggests mere seconds at best – and no safe avenue of escape that can be identified in hindsight. Courts have held that events of this nature constitute a textbook emergency situation. Notably, the Appellate Division, Second Department, in *Wade v. Knight Transp., Inc.*, 151 AD3d 1107 (2d Dept 2017) observed that a driver facing an oncoming vehicle traveling the wrong way was confronted with "a classic emergency" implicating the emergency doctrine.

Likewise, in *Bernot v. Reid*, 227 AD3d 1043, 1045 (2d Dept 2024), a case with analogous facts, the defendant driver was not held liable when another car's sudden movement gave him only seconds to react; the appellate court emphasized that the driver was confronted with "an emergency not of [his] own making," had "only seconds to react, and had virtually no opportunity to avoid a collision." Mr. Tadjiev's predicament was the epitome of a no-win emergency: in a matter of moments, a truck came hurtling into his lane, and there was essentially nothing he could do to stop it from hitting him. Under these circumstances, the emergency doctrine protects Mr. Tadjiev from liability. His response – immediately braking to a stop – was, on its face, a reasonable and instinctual reaction to an imminent collision. There is no evidence that he did anything reckless or improper during those critical seconds. Even if one could hypothesize that a perfect driver might have tried a different maneuver, the emergency doctrine does not demand perfection. It asks only whether the driver's choices were reasonable when judged against the urgent pressure of the moment. Here, stopping one's car when a vehicle is coming at you out of nowhere is a reasonable action. There is certainly no indication that any alternative action would have been more effective. Thus, as a matter of law, Mr. Tadjiev's conduct was consistent with that of a reasonably prudent driver in an emergency situation. The City's arguments, which second-guess Mr. Tadjiev's split-second decision-making, ignore the forgiving lens through which the law views those confronted with sudden danger. Because Mr. Tadjiev did not create the emergency and responded to it in a manner that cannot be deemed irrational or careless, the emergency doctrine exonerates him from negligence (*Bello v. Transit Auth. of N.Y. City*, 12 AD3d 58, 60 [2d Dept 2004]["a driver confronted with a sudden, unexpected circumstance not of his own making… who reacts reasonably under the circumstances may not be held negligent, even if another course of action would have been safer"]). Notably, the City's opposition did not offer any argument to refute the emergency doctrine's applicability, effectively conceding that this was indeed an unforeseen emergency. The court finds, based on the undisputed facts, that Mr. Tadjiev was confronted with a sudden emergency and that his response was reasonable as a matter of law. This is an independent ground for granting Defendants summary judgment on liability (*Vitale*, 44 AD3d at 936).

The City's plea that the motion is premature due to pending discovery is unavailing. CPLR § 3212(f) permits a party to oppose summary judgment on the ground that facts essential to justify opposition may exist but cannot yet be stated. However, the opposing party must make an evidentiary showing that such facts are within the exclusive knowledge of the movant or that

154355/2024   JONES, DARYL vs. THE CITY OF NEW YORK ET AL          Page 10 of 12
Motion No. 002

10 of 12

further discovery would yield material evidence (*Voluto Ventures, LLC v. Jenkens & Gilchrist Parker Chapin LLP*, 44 AD3d 557, 557 [1st Dept 2007]). Here, the City has not identified any specific information that it expects to obtain from depositions which would raise a triable issue. The circumstances of the accident have been captured on video, and Mr. Tadjiev has already described the event in an affidavit. The City does not suggest that Mr. Tadjiev is withholding some crucial detail that only his deposition would reveal; nor does it claim that the sanitation driver would provide an affidavit supportive of the City's position (tellingly, she has provided none). Simply put, there is no indication that further discovery would yield anything beyond what is already known from the video and the physical facts. In this posture, courts routinely reject requests to delay summary judgment. "The mere hope or speculation that evidence sufficient to defeat a motion for summary judgment may be uncovered during the discovery process is insufficient" to deny the motion (*Yonghong Xia v Zhao Xian Zeng*, 219 AD3d 914, 916 [2d Dept 2023]; *see also Alvarez*, 68 NY2d at 324). The City's opposition essentially asks for a fishing expedition on the chance that something might turn up. That is not a proper basis to postpone judgment, especially where, as here, the crucial facts have been captured objectively on video. The court is satisfied that it has a complete and clear record upon which to decide this motion, and no amount of additional questioning is likely to change the incontrovertible reality shown in the dashcam footage.

The City's arguments at times suggest that multiple causes were at play in this accident, implying that even if the City's truck was one cause, Mr. Tadjiev's actions could be another. The court notes, however, that establishing one party's freedom from negligence is not negated merely because another party's negligence also existed. New York's comparative negligence regime permits the apportionment of fault among multiple tortfeasors, but it also allows the court to determine as a matter of law that a particular party bears no fault. In *Rodriguez v. City of New York*, 31 NY3d 312 (2018), the Court of Appeals made clear that a plaintiff may obtain partial summary judgment on a defendant's liability without having to disprove the plaintiff's own comparative fault. By the same token, a defendant who demonstrates that it was not negligent in any degree is entitled to summary judgment even if other parties were negligent. The presence of other culpable conduct does not immunize a non-negligent party from being dismissed. Here, Defendants have demonstrated that they were not negligent at all. There is, therefore, no "comparative" fault to consider on their part. To the extent the City contends that liability should be apportioned between its driver and Mr. Tadjiev, that contention has no factual support in this record. But even assuming *arguendo* that comparative fault were an issue, it "does not preclude [a party's] ability to obtain summary judgment on liability" (*Rodriguez*, 31 NY3d at 324). In practical terms, this means that the court can grant summary judgment to Defendants Azamat and Tadjiev on the issue of liability, thereby removing them from the case, and leave any remaining liability issues (such as the percentage of fault as between the City and perhaps the sanitation vehicle's maintenance contractors, if any) to be resolved later. There is no procedural or legal bar to doing so, and indeed it promotes judicial efficiency and fairness to excise an obviously fault-free defendant from a lawsuit.

Having carefully reviewed the evidence and the applicable law, the court finds that there is no triable issue of fact as to Defendants Azamat and Tadjiev's liability. The material facts are essentially undisputed and, importantly, are corroborated by unimpeachable video evidence. Those facts lead to the inescapable conclusion that Mr. Tadjiev was in no way responsible for this

154355/2024   JONES, DARYL vs. THE CITY OF NEW YORK ET AL                    Page 11 of 12
Motion No.  002

11 of 12

accident. All of the competent evidence indicates that the sole proximate cause of the collision was the negligence of the City's sanitation truck driver and/or a mechanical failure of the City's vehicle. There is no evidence of any negligence by Mr. Tadjiev (or by Mr. Azamat, whose liability would be purely vicarious as owner) that contributed to the happening of the crash. In such circumstances, summary judgment is not only appropriate but warranted to prevent an innocent party from being unduly dragged into further litigation. This outcome is entirely consistent with Appellate Division, First Department, precedent. As noted, the Appellate Division, First Department, in *Aponte*, *Calderon*, *Rooney*, and other cases has affirmed the dismissal of claims against drivers who, like Mr. Tadjiev, were simply in the wrong place at the wrong time and were struck by another vehicle's unforeseeable misconduct. The court is confident that a similar result is compelled here.

Accordingly, Defendants Azamat and Tadjiev have established their entitlement to judgment as a matter of law, and the City Defendants have failed to raise any genuine issue requiring a trial. The evidence overwhelmingly demonstrates that moving Defendants were free from fault, and the opposing arguments amount to speculation unsupported by proof. There is no legal or factual impediment to granting summary judgment in favor of these Defendants on the issue of liability.

For the foregoing reasons, Defendants Koshaev Azamat and Bakhodur Tadjiev's motion for summary judgment is granted. It is hereby

ORDERED that the complaint and all cross-claims against Defendants Azamat and Tadjiev are dismissed in their entirety; and it is further

ORDEDED that counsel for Defendants Azamat and Tadjiev is directed to serve a copy of this decision and order on all parties, and shall file the same with the Clerk of the Court with notice of entry; and it is further

ORDERED that upon said service, the Clerk of the Court is directed to enter judgment in favor of Defendants Azamat and Tadjiev accordingly; and it is further

ORDEDED that this dismissal is on the issue of liability only, and has no effect on plaintiff's continuing claims against the remaining defendants. The balance of the action shall continue as against the City of New York, the Department of Sanitation, and Christina Peduto. The court finds, pursuant to CPLR § 3212(b), that no triable issues of fact exist with respect to moving Defendants' liability.

This constitutes the decision and order of the court. The parties shall proceed to the next stages of litigation in a manner consistent with this decision and order, and are invited to contact the court, with all sides copied, at sfc-part5@nycourts.gov to schedule a settlement conference.

20251208164012HKINGO97117X5610448EA8526B2650922271

| | |
|---|---|
| **12/8/2025** | |
| **DATE** | **HASA A. KINGO, J.S.C.** |

CHECK ONE:

| | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |

154355/2024   JONES, DARYL vs. THE CITY OF NEW YORK ET AL                    Page 12 of 12
Motion No.  002

12 of 12